[No. B164245. Second Dist., Div. Four. May 30, 2003.]

JOHN EISENDRATH, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KATHRYN PRATT ROGERS, Real Party in Interest.

**COUNSEL**

Freid & Goldsman, Gary J. Cohen; Akin Gump Strauss Hauer & Feld, Edward P. Lazarus, L. Rachel Helyar and Jonathan Gottlieb for Petitioner.

No appearance for Respondent.

Trope & Trope, Thomas Paine Dunlap and Steven Knowles for Real Party in Interest.

Dunn & Koes, Pamela E. Dunn and Daniel J. Koes for Several Individual Mediators as Amici Curiae.

## OPINION

**CURRY, J.**—By petition for writ of mandate or prohibition, John Eisendrath seeks relief from orders of the trial court regarding his mediation confidentiality rights under Evidence Code sections 703.5 and 1115 et seq.

After Eisendrath filed a motion to correct a spousal support agreement reached through mediation, real party in interest Kathryn Pratt Rogers sought to depose the mediator. Eisendrath requested a protective order intended to bar discovery and evidence regarding mediation communications, with the exception of certain conversations between himself and Rogers that formed the basis of his motion to correct the spousal support agreement. The trial court found that Eisendrath had impliedly waived his confidentiality rights, denied the protective order, and decided to hold an in camera hearing on the mediator's potential testimony to determine whether it should be admitted.

We conclude that the trial court erred on these matters. However, we also conclude that unless Eisendrath and Rogers execute suitable express waivers, any protective order must also bar admission of all confidential conversations between Eisendrath and Rogers that may be cited in Eisendrath's motion to correct the spousal support agreement.

We therefore grant the relief requested in the petition in part, deny it in part, and remand for further proceedings.

### RELEVANT PROCEDURAL BACKGROUND

Eisendrath and Rogers were married in 1992. Their marriage produced two children, Maxwell, born in 1992, and Samuel, born in 1997.

Eisendrath filed a petition for dissolution of marriage in February 1998. In February 2000, Eisendrath and Rogers began mediation with Ronald Rosenfeld as mediator.

Before commencing mediation, they executed a mediation agreement that expressly states that the mediation was governed by Evidence Code sections 703.5 and 1115 et seq. In addition, the mediation agreement provides: "We agree that what is said in our sessions with Ronald Rosenfeld will be treated as confidential information, and that all communications with Ronald Rosenfeld are privileged and not admissible in Court or subject to discovery. We further agree that Ronald Rosenfeld will not be called as a witness, nor will his notes and/or memoranda be subpoenaed by either of us in any legal

proceeding. We further agree that Ronald Rosenfeld's notes and/or memoranda shall not be released to either of us under any circumstances, and Ronald Rosenfeld may destroy said materials at his discretion."

On April 22, 2002, the trial court filed a stipulated judgment of dissolution that contained orders regarding child custody and visitation, child support, and spousal support. Under the heading "Family Support," the judgment provides in paragraph 9.1: "[Eisendrath] is ordered to pay [Rogers] as non-taxable family support (child support and spousal support) $24,000 per month for 84 months commencing November 1, 2001 and continuing for a period of 83 months thereafter. . . ." Furthermore, paragraph 9.1.g of the judgment provides: "If [Rogers] remarries, or cohabits with another person in a marital-like relationship, [Eisendrath] shall nevertheless remain obligated to pay [Rogers] the family support set forth in paragraph 9.1 above, but [Rogers] in her sole discretion may elect to modify or limit [Eisendrath's] remaining family support obligation by reducing the spousal support component (the sum of $14,000 per month). . . ."

Eisendrath and Rogers each remarried following the judgment of dissolution. On October 21, 2002, Eisendrath filed a motion to correct or reform the judgment under Code of Civil Procedure section 473,[1] and Family Code sections 2121 and 2122.[2] The motion contended that paragraphs 9.1 and 9.1.g of the judgment did not accurately reflect their agreement. According to the motion, Eisendrath "was not represented by counsel during the negotiation and execution of the" judgment, and he "missed language which was contrary to those provisions upon which the parties had already agreed."

In support of the motion, Eisendrath submitted a declaration that he was not represented by counsel while he and Rogers negotiated and executed the judgment. According to the declaration, "[b]efore and during the execution of the" judgment, they discussed generally how to "handle support in a way that would be most beneficial to both of [them] financially."

---

[1]Code of Civil Procedure section 473, subdivision (b), provides: "The court may, upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

[2]Family Code section 2121 provides that in dissolution proceedings, the trial court "may, on any terms that may be just, relieve a spouse from a judgment, or any part or parts thereof, adjudicating support or division of property," provided that it "find[s] that the facts alleged as the grounds for relief materially affected the original outcome and . . . the moving party would materially benefit from the granting of the relief." (Fam. Code, § 2121, subds. (a) & (b).)

Subdivision (e) of Family Code section 2122 permits the trial court to grant relief "[a]s to stipulated or uncontested judgments" for "mistake, either mutual or unilateral, whether mistake of law or mistake of fact."

Regarding paragraph 9.1, Eisendrath stated that he specifically recalled one conversation prior to the signing of the judgment in which he and Rogers agreed that family support was to be taxable. Eisendrath further indicated that he had overlooked the term "non-taxable family support" when he reviewed and signed the judgment.

Regarding paragraph 9.1.g, Eisendrath stated that in "negotiations and conversations . . . during the time period mediation was proceeding," he understood that he—and not Rogers—was to have the discretion to continue spousal support if Rogers remarried. According to Eisendrath, he and Rogers "discussed these provisions numerous times before and during the execution of the" judgment. Eisendrath further stated that upon Rogers's remarriage, she had expected him to continue to pay spousal support, even though this was "inconsistent with the position she took when we negotiated, signed and otherwise discussed those provisions of the" judgment.

On October 29, 2002, Rogers filed a motion for a continuance so that she could depose Rosenfeld. She stated that she was willing to waive her confidentiality rights regarding the mediation, and contended that Eisendrath had "constructively waived any privilege relating to settlement negotiations and mediation" by discussing these matters in his declaration. She also indicated that Rosenfeld had asserted "the mediation privilege," and would not agree to be deposed.

Eisendrath opposed this motion, and requested a protective order barring Rosenfeld's deposition, discovery into the mediation, and admission of any communication during the mediation sessions. He argued that his motion to correct or reform the judgment rested solely on conversations with Rogers outside the mediation sessions. Although he conceded that these conversations did not represent "the totality of the discussions," he stated that he would not rely on discussions within the scope of mediation confidentiality.

Furthermore, Eisendrath contended that the confidentiality statutes and confidentiality provision of the mediation agreement barred Rogers's discovery. According to Eisendrath, in addition, his confidentiality rights under Evidence Code section 1115 et seq., could not be waived absent his express consent, which he had not given, and that Evidence Code section 703.5 barred testimony from Rosenfeld.

Following a hearing, the trial court filed an order on January 8, 2003, that (1) denied Eisendrath's request for a protective order; (2) found that Eisendrath and Rogers had impliedly waived the mediation privilege in Evidence Code section 1115 et seq., and their right to assert Rosenfeld's immunity

under Evidence Code section 703.5; and (3) ordered an in camera hearing to determine whether Rosenfeld should be compelled to testify.[3]

Petitioner filed his petition and request for a stay on January 16, 2003. On February 21, 2003, we issued an order to show case and a temporary stay.

## DISCUSSION

Eisendrath contends that the trial court erred (1) in finding that he had impliedly waived his confidentiality rights under Evidence Code section 1115[4] et seq., and (2) in ordering an in camera hearing to assess potential testimony from Rosenfeld, notwithstanding section 703.5. He argues that the statutes governing mediation confidentiality do not permit implied waivers of confidentiality rights, and bar testimony from Rosenfeld.

Rogers disagrees, contending that Eisendrath's statutory confidentiality rights are akin to the statutory privileges defined in section 910 et seq. These privileges can be waived by conduct amounting to consent (§ 912, subd. (a)), and in some cases, by the tendering of claims that raise issues within the scope of the pertinent privilege (§§ 958, 984, 1001, 1020). Rogers argues that unless Eisendrath's confidentiality rights are subject to these implied waiver principles, he will seek to alter their spousal support agreement while unfairly preventing her from presenting evidence regarding the negotiation of that agreement. Similarly, she argues that testimony from Rosenfeld is necessary for proper resolution of Eisendrath's motion to correct the agreement.

The trial court agreed with Rogers on these matters. In our view, this was error. As we explain below, confidential mediation communications are not admissible absent Eisendrath's express consent (see pt. B.2.a., *post*), and testimony from Rosenfeld is absolutely barred under the circumstances of this case (see pt. C., *post*).

Nonetheless, we also conclude that Eisendrath's motion to correct the judgment itself relies wholly, or in large measure, on confidential mediation communications that are admissible *only* with the parties' express consent (see pt. B.2.b., *post*). We will therefore remand the matter to the trial court to give the mediation participants (including, if necessary, Rosenfeld) an opportunity to enter express waivers regarding the confidential communications relevant to Eisendrath's motion to correct the judgment, and absent

---

[3]Several individual mediators have requested permission to file an amicus curiae brief. We hereby grant them leave to do so.

[4]All further statutory citations are to the Evidence Code, unless otherwise indicated.

such waivers, to enter a protective order barring discovery into, and admission of, Rosenfeld's testimony and *all* confidential communications, including any such communications cited in Eisendrath's motion.

### A. *Statutory Scheme Governing Mediation Confidentiality*

Because the resolution of these issues hinges on the proper interpretation of the statutes in question, we begin with a description of the pertinent statutory scheme.[5] As our Supreme Court explained in *Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 14-15 [108 Cal.Rptr.2d 642, 25 P.3d 1117] (*Foxgate*), this statutory scheme implements a strong legislative policy regarding the confidentiality of mediation.

Under this scheme, "mediation" means "a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement," and "mediation consultation" means "a communication between a person and a mediator for the purpose of initiating, considering, or reconvening a mediation or retaining the mediator." (§ 1115, subds. (a), (c).) The scheme applies to all mediations, with limited exceptions not applicable here. (§ 1117.)

Section 1119 states the fundamental rule regarding confidentiality of mediation communications. It provides: "(a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any . . . civil action . . . in which, pursuant to law, testimony can be compelled to be given. [¶] . . . [¶] (c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential."

The statutory scheme places several limits on this broad rule. To begin, section 1125 provides that a mediation ends for the purposes of confidentiality when the parties execute a suitable settlement agreement, or when the participants execute a writing terminating the mediation. Thus, "the confidentiality protections . . . do not apply to any later proceedings, such as attempts to further refine the content of the agreement." (Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code (2003 supp.) foll. § 1125, p. 136.) Nonetheless, confidential communications made before the end of the mediation remain confidential after the mediation ends (§ 1126).

---

[5]Eisendrath has requested that we take judicial notice of materials related to the legislative history of section 1115 et seq. We hereby do so, although these materials play no role in our analysis of the issues before us.

Other provisions state exceptions to the confidentiality rule for mediation agreements, disclosure of the mediator's identity, and settlement agreements that emerge from the mediation, and some categories of evidence used in the mediation.[6] (§§ 1120, 1123, 1124.) Finally, the statutory scheme specifies two circumstances under which mediation participants may agree to the disclosure of mediation communications.

First, the statutory scheme permits mediation communications to be disclosed or admitted if "[a]ll persons who conduct or otherwise participate in the mediation expressly agree in writing," or enter into a recorded oral agreement that is memorialized in writing in a timely fashion. (§§ 1118, 1122, subd. (a)(1).) The phrase "[a]ll persons," as used here, includes "not only parties but also the *mediator* and other nonparties attending the mediation . . . ." (Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code, *supra*, foll. § 1122, p. 133, italics added.)

Second, communications "prepared by or on behalf of fewer than all the mediation participants" may be disclosed or admitted upon such waivers from the relevant participants, provided that these communications do not "disclose anything said or done or any admission made in the course of the mediation." (§ 1122, subd. (a)(2).)

The statutory scheme also limits disclosures by the mediator. Section 1121 provides that absent a written agreement or suitable oral agreement from all the parties to the mediation, "[n]either a mediator nor anyone else may submit to a court or other adjudicative body, and a court or other adjudicative body may not consider, any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator, other than a report that is mandated by court rule or other law and that states only whether an agreement was reached . . . ."

This restriction supplements section 703.5, which provides (with qualifications that are not applicable here): "No . . . mediator[] shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding . . . ."

---

[6]The exception regarding evidence is found in subdivision (a) of section 1120, which provides: "Evidence otherwise admissible or subject to discovery outside of a mediation or a mediation consultation shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation or a mediation consultation." The scope of this exception is presently before our Supreme Court in *Rojas v. Superior Court*, review granted January 15, 2003, S111583.

Although the communications at issue here do not appear to implicate this exception, we do not decide this question, which may be addressed upon remand (see fn. 8, *post*).

B. *No Implied Waiver*

 The first issue raised by Eisendrath is whether mediation participants can waive their confidentiality rights in an implied manner, by raising a claim about the agreement reached through mediation. Although there is no case law on point, we find guidance on this issue in *Foxgate, supra,* 26 Cal.4th 1.

1. *Foxgate*

In *Foxgate,* a mediator submitted a report to the trial court stating that a participant had engaged in misconduct during mediation proceedings. (*Foxgate, supra,* 26 Cal.4th at pp. 4-8.) After the trial court awarded sanctions, the Court of Appeal reversed and remanded the matter because the trial court's order was insufficiently detailed under Code of Civil Procedure section 128.5. (*Foxgate,* at pp. 8-10.)

For the guidance of the trial court, the Court of Appeal addressed whether the mediator's report could support sanctions. (*Foxgate, supra,* 26 Cal.4th at p. 8.) Despite the unqualified ban on mediator reports in section 1121, it concluded that policy considerations warranted a nonstatutory exception to this ban for reports of misconduct. (*Foxgate,* at p. 9.) Applying the rule that unambiguous statutes are subject to judicial construction when literal interpretation would lead to an absurd result or defeat manifest legislative purposes (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1334, fn. 7 [283 Cal.Rptr. 893, 813 P.2d 240]), the Court of Appeal reasoned that the nonstatutory exception was necessary to ensure good faith conduct in mediations. (*Foxgate,* at p. 9.)

Our Supreme Court rejected the Court of Appeal's determination on this matter. (*Foxgate, supra,* 26 Cal.4th at pp. 13-18.) It determined that the language of sections 1119 and 1121 was clear, as was the legislative intent underlying the statutory scheme, namely, to promote mediation by ensuring confidentiality. (*Foxgate,* at pp. 14-15.) Furthermore, it determined that the nonstatutory exception was not needed to avoid absurd results or to expedite legislative goals, reasoning that in enacting the scheme, the Legislature had balanced the policy that promotes effective mediation through confidentiality against a policy of encouraging good faith conduct in mediation through disclosure of misconduct. (*Id.* at p. 17.)

The court in *Foxgate* thus stated: "To carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme, which includes sections 703.5, 1119, and 1121, unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception." (*Foxgate, supra,* 26 Cal.4th at p. 15, fn. omitted.)

Nonetheless, the *Foxgate* court left open the possibility that mediators may be compelled to disclose confidential communications in extraordinary circumstances, notwithstanding the statutory scheme. (*Foxgate, supra,* 26 Cal.4th at pp. 15-17.) It discussed two cases in which the courts had permitted such testimony, and distinguished these cases on their facts, *without* rejecting them. (*Ibid.*)

In the first of these cases, *Rinaker v. Superior Court* (1998) 62 Cal.App.4th 155, 161-162 [74 Cal.Rptr.2d 464] (*Rinaker*), two youths were charged with vandalism after they allegedly threw rocks at a car, and the car's owner also brought a civil harassment action against them. The owner and the youths then participated in a voluntary mediation to resolve the harassment action. (*Ibid.*) During juvenile delinquency proceedings, the youths sought to impeach the owner with testimony from the mediator that the owner had admitted in the mediation that he had not seen the rock throwers. (*Ibid.*) The court in *Rinaker* concluded that the statutory ban on the disclosure of mediation communications yielded to the youths' constitutional rights to confront and cross-examine prosecution witnesses. (*Id.* at pp. 165-167.) It directed the juvenile court to conduct an in camera examination of the mediator's potential testimony, and to determine whether this testimony was necessary to vindicate the constitutional rights at issue. (*Id.* at pp. 169-171.)

In the second case, *Olam v. Congress Mortg. Co.* (N.D.Cal. 1999) 68 F.Supp.2d 1110, 1113-1118 (*Olam*), the parties to an action arising from the nonpayment of a loan participated in voluntary mediation, which resulted in a settlement agreement. Subsequently, one of the parties contended that she was mentally incompetent during the mediation, and the mediation participants—except the mediator—expressly waived their confidentiality rights to the extent necessary to resolve the competency question. (*Id.* at p. 1129.) Citing *Rinaker*, the court in *Olam* concluded that it could compel the mediator to testify on the issue of competency, provided that an in camera hearing revealed that the mediator's testimony was sufficiently probative. (*Id.* at p. 1131-1136.)

Although *Foxgate* may raise doubts about *Rinaker* and *Olam*, it did not expressly criticize or qualify them. The situation in *Foxgate* did not involve criminal constitutional rights or waivers from the parties to mediation, and the *Foxgate* court elected to distinguish *Rinaker* and *Olam* on their facts. (*Foxgate, supra,* 26 Cal.4th at pp. 15-17.) Nonetheless, given the forceful rejection of nonstatutory exceptions to mediation confidentiality requirements in *Foxgate*, we conclude that *Rinaker* and *Olam* should be closely limited to their facts.

## 2. *Application to Present Case*

The trial court in the present case apparently determined that Eisendrath's confidentiality rights were impliedly waived under the principles applicable to the privileges in section 910 et seq., notwithstanding the clear and detailed provisions requiring the express waiver of confidentiality rights in section 1122. In view of *Foxgate*, this was error. As we explain below, (1) nothing in section 910 et seq. evidences any legislative intent to extend principles of implied waiver to mediation confidentiality rights. Furthermore, (2) this extension is not needed to avoid unacceptable consequences.

### a. *Inapplicable Waiver Principles*

The relationship of the provisions governing privileges in section 910 et seq. to the statutory scheme at issue is a question of statutory interpretation.

■ "A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. [Citation.]" (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) In examining the statutory language, we must consider "the context of the entire statute . . . and the statutory scheme of which it is a part. . . . 'Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]' [Citations.]" (*Id.* at p. 388.)

Section 910 et seq. defines and governs a group of particular privileges.[7] Subdivision (a) of section 912 lists eight of these privileges, and provides that any right to assert the enumerated privileges "is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or *conduct* of the holder of the privilege indicating consent to the disclosure . . . ." (Italics added.)

---

[7]These privileges include the privilege of a defendant in a criminal case (§ 930), the privilege against self-incrimination (§ 940), the lawyer-client privilege (§ 950), the spousal privilege (§ 970), the privilege for confidential marital communications (§ 980), the physician-patient privilege (§ 990), the psychotherapist-patient privilege (§ 1010), the clergyman-penitent privilege (§ 1030), the sexual assault victim-counselor privilege (§ 1035), the domestic violence victim-counselor privilege (§ 1037), the privilege regarding official information and identity of informers (§ 1040), the political vote privilege (§ 1050), and the trade secret privilege (§ 1060).

Furthermore, four of the privileges are accompanied by provisions expressly subjecting them to the so-called in-issue doctrine (§§ 958 [attorney-client privilege], 984 [marital communication privilege], 1001 [physician-patient privilege], 1020 [psychotherapist-patient privilege]). ■ "The in issue doctrine creates an implied waiver . . . when [the privilege's holder] tenders an issue involving the substance or content of a protected communication . . . ." (*Rockwell Internat. Corp. v. Superior Court* (1994) 26 Cal.App.4th 1255, 1268 [32 Cal.Rptr.2d 153], italics deleted.)

This doctrine stems from considerations of fairness. As Witkin explains in the case of the attorney-client privilege, "[i]f, in litigation between an attorney and the attorney's client . . . , the attorney's integrity, good faith, authority, or performance of his or her duties is questioned, the attorney should be permitted to meet this issue with testimony as to the attorney's communications with the client." (2 Witkin, Cal. Evidence (4th ed. 2000) Witnesses, § 161, p. 434.)

■ We conclude that the implied waiver provisions in section 910 et seq., by their plain language, are limited to the particular privileges enumerated therein. *None* of these waiver provisions refer to mediation confidentiality rights or the statutory scheme governing these rights. Furthermore, we may not extend these waiver provisions beyond their existing limits. ■ As our Supreme Court explained in *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 373 [20 Cal.Rptr.2d 330, 853 P.2d 496], "[c]ourts may not add to the statutory privileges except as required by state or federal constitutional law [citations], nor may courts imply unwritten exceptions to existing statutory privileges. [Citations.]"

Nothing in *Rinaker* or *Olam* disturbs our conclusion on this matter. Unlike *Rinaker*, no constitutional right touching the presentation of evidence is implicated in this case. Furthermore, *Olam* did not address the question of statutory interpretation presented here.

b. *No Unacceptable Consequences*

■ Here, as in *Foxgate*, enforcing the literal meaning of the pertinent mediation statutes does not create unacceptable or unfair results, notwithstanding Rogers's contention on this point. She argues that if Eisendrath has not impliedly waived his confidentiality rights by seeking to correct the spousal support agreement, he will be able to attack this agreement on the basis of limited and potentially misleading evidence—that is, conversations outside the mediator's presence—while barring Rogers from presenting a full picture of the negotiations during the mediation.

In our view, Rogers's contention is incorrect, and rests on a misapprehension of the scope of mediation confidentiality. Statutory exceptions aside, sections 1119 and 1121, by their plain language, render confidential any communications between mediation participants before the end of mediation that occur *outside* the mediator's presence, provided that these communications are materially related to the mediation. Thus, all such conversations cited in Eisendrath's motion to correct the spousal support agreement are confidential, and may not be admitted into evidence unless suitable express waivers are executed.

As we have indicated (see pt. A., *ante*), the confidentiality rule in section 1119 sweeps broadly: it bars discovery and evidence of "anything said" not merely "in the course of" mediation, but "for the purpose of . . . , or pursuant to" mediation. Only certain communications made after the end of the mediation, or falling under other enumerated exceptions, escape its reach. Thus, the confidentiality rule in section 1119 encompasses communications by participants before the end of mediation that are materially related to the purpose of the mediation, regardless of whether these communications are made in the mediator's presence.

This conclusion finds corroboration in the language and structure of section 1122. Under this provision, communications "made or prepared for the purpose of, or in the course of, or pursuant to, a mediation" are protected from disclosure unless *all* mediation participants—including the mediator—give their express consent. (§ 1122, subd. (a)(1).)

However, subdivision (a)(2) of section 1122 permits the disclosure of confidential communications "on behalf of" only some of the mediation participants, provided that the pertinent participants give their express consent, and the communications do not reveal "anything said or done . . . in the course of the mediation." This provision makes little sense unless mediation confidentiality encompasses communications from or involving participants before the end of mediation that (1) are materially related to the purposes of the mediation, (2) occur outside the mediator's presence, and (3) do not mention statements and conduct that occur before the mediator. (See Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code, *supra*, foll. § 1122, p. 133.)

Here, Eisendrath seeks to correct the spousal support agreement, which resulted from the mediation, on the basis of communications meeting this description. His declaration in support of his motion to correct the spousal support agreement describes conversations with Rogers about the terms of his spousal support obligations that occurred outside the presence of the

mediator. These conversations are generally characterized as having occurred "[b]efore and during the execution of the" judgment, or "during the time period mediation was proceeding," and the only conversation described with specificity occurred before the judgment was signed. Furthermore, Eisendrath has stated that his motion "does not bring into play any of the communications between the parties and the mediator."

In view of these representations, we conclude that Eisendrath's motion to correct the judgment rests exclusively or substantively on conversations that constitute confidential communications. Accordingly, evidence of these conversations is inadmissible absent suitable express waivers from Eisendrath and Rogers.[8]

We recognize that this conclusion gives Rogers a substantial measure of control over Eisendrath's ability to present evidence in support of his motion to correct the spousal support agreement. Nonetheless, this result does not disturb our interpretation of the statutory scheme in question. In explaining that the Legislature had balanced conflicting policies in enacting this scheme, the *Foxgate* court recognized that the scheme effectively gives control over evidence of some sanctionable misconduct to the *party engaged in the misconduct*. On this matter, the court in *Foxgate* remarked that "none of the confidentiality statutes currently make an exception for reporting bad faith conduct . . . when doing so would require disclosure of communications . . . ." (*Foxgate, supra,* 26 Cal.4th at p. 17.) Following the *Foxgate* court, we assume that the Legislature considered these limitations on the presentation of evidence when it enacted the statutory scheme.

In any event, Rogers has indicated her willingness to waive her confidentiality rights, provided that there is a suitable waiver on Eisendrath's part.

## C. *No Testimony from Mediator*

■ The remaining issue concerns Rosenfeld's competence as a witness. On this matter, the trial court apparently followed *Olam* and *Rinaker* in denying Eisendrath's request for an order barring Rosenfeld as a witness, and in deciding to hold an in camera hearing on Rosenfeld's potential testimony.

---

[8]During oral argument, Eisendrath's counsel suggested that some of the conversations upon which his motion to correct the judgment relies may have occurred after the end of mediation. Under the statutory scheme at issue, the confidentiality rule does not encompass conversations between Eisendrath and Rogers that (1) occurred after the end of the mediation (§ 1125) and (2) do not implicate confidential communications made prior to the end of the mediation (§ 1126). Upon remand, the trial court may inquire into whether any conversation cited in Eisendrath's motion escapes the confidentiality rule on these grounds, or any other ground found in the statutory scheme.

The trial court erred. Under section 703.5, Rosenfeld is incompetent to testify, and any exception to this rule found in *Rinaker* and *Olam* is inapplicable here.[9] As we have explained (see pt. B.1.a, *ante*), the case before us falls outside of *Rinaker* because no constitutional right concerning the presentation of evidence is implicated.

Furthermore, unlike *Olam*, Eisendrath and Rogers have not executed waivers of their confidentiality rights. However, assuming that they do so, the trial court here contemplates compelling testimony from Rosenfeld on the terms of the spousal support agreement reached through mediation, whereas the court in *Olam* sought testimony from the mediator on a narrow issue peripheral to the agreement achieved through mediation, namely, the competence of a participant. In our view, extending *Olam* to the present case would authorize mediator testimony in virtually every dispute over a mediated agreement, and thus gut section 703.5.

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to: (1) vacate its January 8, 2003, order; (2) determine the extent to which the mediation participants (including Rosenfeld) will expressly waive their confidentiality rights, in accordance with this opinion; and (3) issue an order barring testimony from Rosenfeld, and discovery into, and admission of, all mediation matters not encompassed by the participants' waivers or otherwise permitted by section 1115 et seq. The temporary stay shall be effective until this decision is final as to this court. Petitioner is awarded his costs.

Vogel (C. S.), P. J., and Hastings, J., concurred.

---

[9]In view of this conclusion, it is unnecessary for us to resolve Eisendrath's contentions about the trial court's rulings based on the confidentiality provisions of the mediation agreement.