183 Cal.App.4th 949 (2010)
JOHN PORTER et al., Plaintiffs and Appellants,
v.
STEVEN WYNER et al., Defendants and Respondents.
No. B211398.
Court of Appeals of California, Second District, Division Eight.
April 8, 2010.
*951 Sauer & Wagner, Gerald L. Sauer and Laurie B. Hiller for Plaintiffs and Appellants.
Robie & Matthai, Kyle Kveton, Leah K. Bolea; Wyner & Tiffany, Steven Wyner and Marcy J.K. Tiffany for Defendants and Respondents.

OPINION
BIGELOW, P. J.

Introduction
Plaintiffs and appellants John Porter and Deborah Blair Porter (the Porters) appeal an order granting a motion for new trial in favor of defendants and respondents, Steven Wyner and Marcy Tiffany (Wyner Tiffany), following a jury verdict that (1) awarded Mrs. Porter $211,000 in back wages and the Porters $51,000 for breach of an attorney fee agreement; and (2) rescinded a release the Porters gave Wyner Tiffany regarding tax advice.
Wyner Tiffany had previously represented the Porters in a separate lawsuit brought by the Porters against the Manhattan Beach Unified School District and California's State Department of Education. The instant lawsuit arose as a result of Wyner Tiffany's failure to follow through on a promise that was allegedly made to the Porters during a mediation of that underlying action wherein Wyner Tiffany promised to pay the Porters certain proceeds from their attorney fees. Though Wyner Tiffany initially objected to the admissibility of the communications made during the mediation of the underlying lawsuit, they later withdrew the objection. At trial, evidence of the communications between Wyner Tiffany and the Porters with respect to the promises made at the mediation were admitted. Approximately a month after the trial *952 court entered judgment, it granted a motion for new trial because it believed the then newly decided case of Simmons v. Ghaderi (2008) 44 Cal.4th 570 [80 Cal.Rptr.3d 83, 187 P.3d 934] (Simmons), mandated such a result.
Appellants claim the trial court erred in granting the new trial, as the communications between an attorney and its client do not fall within the purview of mediation confidentiality. Wyner Tiffany contend the trial court properly granted their motion for a new trial because the jury's consideration of confidential mediation communications created an irregularity in the proceedings statutorily mandating a new trial. Wyner Tiffany also cross-appeal, contending the trial court erred in ruling their motion for a judgment notwithstanding the verdict (JNOV) was moot.
We reverse the order granting a new trial and remand the matter back to the trial court to rule on the JNOV.

FACTS

1. Underlying Action

Wyner Tiffany are partners in a law firm that focuses on educational rights of disabled students. In 1999, the Porters retained Steven Wyner, then a sole practitioner, to assist in obtaining special education services for their son. Wyner filed a lawsuit in the federal district court (the underlying action) on behalf of the Porters and their son against the Manhattan Beach Unified School District (District) and California's State Department of Education (Department). The district court dismissed the underlying action, but that dismissal was reversed by the Ninth Circuit Court of Appeals. (Porter v. Board of Trustees of Manhattan Beach (9th Cir. 2002) 307 F.3d 1064.)
After the reversal, Wyner obtained for the Porters a partial summary adjudication on liability and the appointment of a special master to oversee the Porter child's education.

2. Mediation and Settlement

Wyner Tiffany then brought a second motion for partial summary judgment on the Porters' behalf. Just before the second motion for partial summary judgment was to be heard in April 2005, the parties in the underlying action participated in a private mediation conducted by a retired judge.
The District and the Department were represented by their individual counsel of record and by attorney Robert Feldhake, acting as chief negotiator *953 for the defense. Nineteen persons, excluding the mediator, signed a confidentiality agreement prepared by the mediation service. The confidentiality agreement expressly provided that the provisions of Evidence Code sections 1115 through 1128 and 703.5 would apply to the mediation.[1]
At the conclusion of the mediation session, the District and the Department signed a stipulation for settlement in which they agreed to fund up to $1,131,650 for the education of the Porters' son, to be overseen by the special master, and to pay $5.6 million for general damages, special damages, attorney fees and costs.[2] Although it was not separately broken out in the stipulation, Wyner Tiffany and the Porters came to an understanding that $1,650,000 of the settlement would be allocated to attorney fees and costs. The stipulation for settlement did not include any provision waiving mediation confidentiality for purposes of enforcement, and proposed provisions for waiving mediation confidentiality were crossed out in the printed form.[3]

3. Negotiation of Definitive Settlement Documents

Over the next three months, the parties negotiated over the form of the definitive settlement agreement.

A. Retention of Tax Attorney

A few days after the mediation meeting, Wyner Tiffany became aware of a possibility that the settlement proceeds the Porters were to receive might be taxable, and they so informed the Porters. Wyner Tiffany recommended that the Porters retain Robert Wood, an attorney who specialized in providing tax advice on litigation payments, to help structure the settlement. The Porters expressed their agreement, and, in early May 2005, Wyner Tiffany retained Wood to provide advice on minimizing the tax consequences of the settlement.

*954 B. Agreement to Share Responsibility for Tax Attorney Fees

In July 2005, the Porters signed an agreement whereby, in exchange for Wyner Tiffany paying one-half of Wood's fees, the Porters agreed to release Wyner Tiffany from liability for any tax advice given the Porters.[4] Wyner Tiffany funded Wood's initial retainer.

4. Formal Settlement

In early August 2005, the parties to the underlying action executed a formal settlement agreement encompassing the terms negotiated at the mediation meeting. Under the definitive settlement agreement, the District and the Department agreed to deposit $1,131,650 in the special master's fund, pay $1,580,000 into a special needs trust being established for the Porters' son, pay $2,370,000 into an existing Porter family trust and pay Wyner Tiffany $1,650,000 for attorney fees and costs.
Paragraph 19 of the settlement agreement recited: "Upon the full execution of this Agreement, the Parties, and each of them, waive the terms and provisions of that certain Judicial Arbitration Mediation Service Confidentiality Agreement (California), dated April 26, 2005. The Parties acknowledge and agree that the terms and provisions of this Agreement are not confidential."[5]
The Porters and Wyner Tiffany in the underlying action signed the settlement agreement as parties. Wyner signed at the end of the agreement on behalf of Wyner & Tiffany under the words, "APPROVED AS TO FORM."
The district court approved the settlement, including the payment of attorney fees, and issued a stipulated dismissal of the underlying action.
*955 The settlement sums were deposited and paid by Wyner Tiffany in the underlying action as stipulated.

5. Subsequent Attorney-client Dispute

After the underlying action was concluded, a dispute arose between the Porters and Wyner Tiffany over several matters, including Wyner Tiffany's failure to reimburse the Porters for the attorney fees and costs the Porters had previously paid and Wyner Tiffany's alleged rendering of incorrect tax advice to the Porters regarding settlement proceeds. The Porters also claimed Wyner Tiffany failed to pay Mrs. Porter for services she rendered as a paralegal in the underlying action out of the $1,650,000 Wyner Tiffany received in the settlement.
Wyner Tiffany asserted they were not required to reimburse the Porters for attorney fees and costs the Porters previously advanced because the amount Wyner Tiffany received under the settlement was less than the amount they could have claimed under a contingency fee provision in their retainer agreement. Wyner Tiffany further asserted they were not required to pay Mrs. Porter's fees as a paralegal from Wyner Tiffany's portion of the settlement because Mrs. Porter had been fully compensated for her loss of wages in the settlement.

PROCEDURAL HISTORY

1. Complaint and Cross-complaint

In February 2006, the Porters filed the present action against Wyner Tiffany in the superior court. A second amended complaint asserted claims including legal malpractice, breach of fiduciary duty, constructive fraud, negligent misrepresentation, breach of fee agreement, rescission, unjust enrichment and liability for unpaid wages.[6]
Wyner Tiffany filed a cross-complaint against the Porters. The cross-complaint purportedly included a claim by Wyner Tiffany against the Porters for breach of the tax advice and release agreement under which the Porters had promised to pay one-half of Attorney Wood's fees and costs.[7]

*956 2. Objections Based on Mediation Confidentiality

Wyner Tiffany moved to strike all allegations in the second amended complaint concerning communications at the mediation of the underlying action. That motion was denied by the trial court.
Wyner Tiffany also objected during discovery to the disclosure or use of any information relating to the mediation of the underlying action. The trial court denied the motion to compel further response solely on the ground that Wyner Tiffany's existing responses and objections were sufficient.
At the beginning of trial, Wyner Tiffany brought a motion in limine asking the trial court to bar the admission of any evidence subject to mediation confidentiality.
The Porters opposed the motion to exclude such evidence. They maintained that all signatories to the settlement agreement had expressly and voluntarily waived mediation confidentiality and that Wyner Tiffany had executed the settlement agreement on Wyner & Tiffany's behalf. The Porters argued that even if Wyner Tiffany had not waived mediation confidentiality, it would be unjust, when there is a claimed breach of duty arising out of the attorney-client relationship, to allow a client or an attorney to bar the other from producing pertinent evidence.
The Porters urged the trial court to apply section 958 to preclude application of mediation confidentiality to communications between attorney and client.[8] The Porters additionally contended that Wyner Tiffany had waived the mediation "privilege" pursuant to section 912 by producing without coercion during discovery documents "prepared for the purpose of, in the course of, or pursuant to" the mediation, such as Wyner's handwritten mediation notes and his copy of the stipulation for settlement.[9] The Porters further claimed Wyner *957 Tiffany had relied on the very documents they were seeking to protect in pleadings filed with the court, such as a response to a separate statement in support of a motion to compel further responses to written discovery.

3. Withdrawal of Motion in Limine

In a conference with the judge prior to trial, counsel for Wyner Tiffany withdrew the motion in limine, stating the withdrawal was "[b]ased on the arguments that were made and raised by the [Porters] in their opposition, including the issue of waiver by all participants, and the waiver in the final settlement agreement." The court therefore allowed counsel to reopen discovery to allow witnesses to answer questions to which objections had been interposed based on mediation confidentiality, "[s]ince [respondents] have waived it and since we all agree."

4. Trial and Verdict

At trial, the Porters testified to communications that occurred with respect to, in the course of or pursuant to the mediation and introduced documentary evidence of mediation communications.
Both Wyner and Tiffany were called by the Porters as adverse witnesses during the Porters' case-in-chief. Wyner Tiffany were questioned by the Porters' counsel regarding mediation negotiations. Wyner Tiffany were then examined by their own counsel in rebuttal to the Porters' claims and in support of Wyner Tiffany's cross-complaint. Wyner testified his notes of the mediation expressly indicated the Porters made an initial settlement demand and such amount included Mrs. Porter's lost wages. Wyner also testified that, several days after the agreement to settle at the mediation, he and Mrs. Porter discussed with tax attorney Wood the advisability of her reporting some of the settlement as income to the Internal Revenue Service. Tiffany testified that the settlement agreement covered all of the claims brought by the Porters, which included Mrs. Porter's loss of wage claim.
In March 2008, the jury returned a verdict awarding the Porters a total of $262,000, plus interest. The jury found that Wyner Tiffany owed Mrs. Porter $211,000 in back wages for her services as a paralegal and the Porters $51,000 for breach of the attorney-client fee agreement. The jury also determined the tax advice and release agreement between Wyner Tiffany and the Porters should be rescinded. The jury found, however, that Wyner Tiffany did not breach any fiduciary duty and were not liable to the Porters for constructive fraud, negligent misrepresentation or unjust enrichment.
As to the cross-complaint, the jury found the Porters did not breach the tax advice and release agreement regarding their obligation to pay Attorney Wood's fees and costs.
*958 The trial court entered a judgment based on the verdict in June 2008.

5. Motions for New Trial and JNOV

About a month later, in July 2008, the California Supreme Court issued its opinion in Simmons, supra, 44 Cal.4th 570, and Wyner Tiffany moved for a new trial on the ground that they were prevented from having a fair trial because of an irregularity in the proceedings. In support of the motion for new trial, Wyner Tiffany cited Simmons, arguing evidence concerning mediation in the underlying action was improperly placed before the jury. At the same time, Wyner Tiffany filed a notice of motion for JNOV, and presumably a motion was filed afterwards indicating the points and authorities in support thereof, but it was not made part of the record on appeal.
Based on Simmons, the trial court granted the motion for new trial. The court orally stated the Simmons case "makes it mandatory for me to grant a motion for new trial," adding, "I don't need to go into any of the other matters because I think they are all subsumed under the rationale of the California Supreme Court." The court's minute order stated simply that the motion for new trial is granted "pursuant to Simmons" and ordered the judgment set aside and vacated.

6. Appeal and Cross-appeal

The Porters timely appealed from the order granting a new trial and setting aside and vacating the judgment. Wyner Tiffany cross-appealed from the trial court's ruling that their motion for judgment notwithstanding the verdict was moot.

CONTENTIONS
In their appeal, the Porters contend Simmons provides no proper ground to order a new trial and that the grant of a new trial was procedurally improper on numerous additional grounds. They further contend that substantial evidence supported the jury's verdict with respect to their claims for breach of contract and for rescission.
On cross-appeal, Wyner Tiffany contend the trial court should have granted their motion for JNOV as to Mrs. Porter's wage claim against Wyner Tiffany, the Porters' claim for rescission and refund of attorney fees and costs, Wyner Tiffany's claim for breach of contract against the Porters and a claim Wyner Tiffany asserted for conversion of documents and electronic records against Mrs. Porter.

*959 STANDARD OF REVIEW
Orders granting a new trial generally are reviewed under the deferential abuse of discretion standard. (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 859 [107 Cal.Rptr.2d 841, 24 P.3d 493].) However, "any determination underlying any order is scrutinized under the test appropriate to such determination. [Citations.]" (Ibid.) When a trial court grants a motion for new trial based on an error of law occurring in the trial, the determination is reviewed de novo. (Id. at p. 860; Westamerica Bank v. MBG Industries, Inc. (2007) 158 Cal.App.4th 109, 130 [70 Cal.Rptr.3d 125].) Where a trial court grants a new trial solely upon an erroneous concept of legal principles applicable to the case, its order is appropriately reversed. (Maher v. Saad (2000) 82 Cal.App.4th 1317, 1323 [99 Cal.Rptr.2d 213].)
"A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. [Citation.]" (Sweatman v. Department of Veterans Affairs (2001) 25 Cal.4th 62, 68 [104 Cal.Rptr.2d 602, 18 P.3d 29].) We review the record to ascertain whether substantial evidence supports the jury's verdict and the trial court's decision, i.e., whether the plaintiffs proved every element of their cause of action. (Stubblefield Construction Co. v. City of San Bernardino (1995) 32 Cal.App.4th 687, 703 [38 Cal.Rptr.2d 413]; see also OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp. (2007) 157 Cal.App.4th 835, 845 [68 Cal.Rptr.3d 828].)

DISCUSSION

Appeal; The Communications Between an Attorney and Client Are Not Within Mediation Confidentiality
(1) Section 1119, subdivision (a) provides that evidence of anything said or admissions made "for the purpose of, in the course of, or pursuant to," the mediation process is not admissible or subject to discovery in any civil action. The same limitations apply to any writings prepared pursuant to or in connection with a mediation proceeding. (§ 1119, subd. (b).) Further, all communications, negotiations, or settlement discussions by and between participants in the course of a mediation is to remain confidential. (§ 1119, subd. (c).) "Neither a mediator nor anyone else may submit to a court or other adjudicative body, and a court or other adjudicative body may not consider, any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator, other than a report that is mandated by court rule or other law and that states only whether an agreement was reached, unless all parties to the mediation *960 expressly agree otherwise...." (§ 1121.) These protections continue to apply even after a mediation ends. (§ 1126.)
Our Supreme Court has declared: "The legislative intent underlying the mediation confidentiality provisions of the Evidence Code is clear.... [T]he purpose of confidentiality is to promote `a candid and informal exchange regarding events in the past.... This frank exchange is achieved only if the participants know that what is said in the mediation will not be used to their detriment through later court proceedings and other adjudicatory processes.' [Citations.]" (Foxgate Homeowners' Assn. v. Bramalea California, Inc. (2001) 26 Cal.4th 1, 14 [108 Cal.Rptr.2d 642, 25 P.3d 1117].) The court has also explained that "confidentiality is essential to effective mediation, a form of alternative dispute resolution encouraged and, in some cases required by, the Legislature. Implementing alternatives to judicial dispute resolution has been a strong legislative policy since at least 1986." (Ibid.; see also Rojas v. Superior Court (2004) 33 Cal.4th 407, 415 [15 Cal.Rptr.3d 643, 93 P.3d 260].)
A review of the legislative history for section 1152 (offer to compromise), on which section 1119 is based, underscores the legislators' understanding and intent regarding the scope of confidentiality of settlement discussions. "Under existing law as set out in the Evidence Code, offers to compromise a claim made by a party to an action are not admissible into evidence to prove liability of that party." (Sen. Quentin Kopp, letter to Governor Deukmejian re Sen. Bill No. 450 (1987-1988 Reg. Sess.) Aug. 26, 1987, italics added.)
The purpose, policy and intent behind mediation confidentiality is to protect the free flow of communication and ideas (e.g., demands/offers) that form the basis and structure of a successful resolution process. The confidentiality that is accorded mediation was never intended to protect communications or agreements between a client and his own counsel should a conflict arise between them. The attorney-client privilege, codified in section 954, already provides the necessary protection. Section 958, through its waiver procedure, allows a client to seek appropriate recourse should something occur that places him and his attorney on a conflict course. It provides that there is "no privilege" that covers "a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship." (§ 958.)
If the mediation confidentiality sphere were to be extended to the attorney-client relationship it would render section 958 a nullity. The mediation process and its attendant confidentiality would trump the attorney-client privilege and preclude the waiver of it by the very holder of the privilege. This would create a rather anomalous situation wherein a well-established *961 and recognized privilege and waiver process is thwarted by a nonprivileged statutory scheme designed to protect a wholly different set of disputants. We do not believe that legislative intent, existing evidence code statutes, and case precedent surrounding the mediation process were meant to abrogate section 958.
To expand the mediation privilege to also cover communications between a lawyer and his client would seriously impair and undermine not only the attorney-client relationship but would likewise create a chilling effect on the use of mediations. In fact, clients would be precluded from pursuing any remedy against their own counsel for professional deficiencies occurring during the mediation process as well as representations made to the client to induce settlement. The confidentiality aspect which protects and shrouds the mediation process should not be extended to protect anything other than a frank, candid and open exchange regarding events in the past by and between disputants. It was not meant to subsume a secondary and ancillary set of communications by and between a client and his own counsel, irrespective of whether such communications took place in the presence of the mediator or not.
(2) To support this conclusion, we turn to the definition of mediation, found in section 1115, subdivision (a). It provides, "`[m]ediation' means a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement." Indeed, the California Law Revision Commission, when it drafted the mediation confidentiality provisions in the Evidence Code, advised the Legislature and the Governor that it sought to "clarify[] the application of mediation confidentiality to settlements reached through mediation" because "[c]larification is critical to aid disputants in crafting agreements they can enforce." (Recommendation: Mediation Confidentiality (Jan. 1997) 26 Cal. Law Revision Com. Rep. (1996) p. 409, italics added.) The communications at issue here are not communications between disputants and a mediator. The disputants in a mediation process are not the attorney and his client; they are the parties who file the lawsuit. A mediation is not conducted to resolve a dispute between a lawyer and the client the attorney represents. The communications in the attorney-client relationship like the ones at issue in this case fall outside those to which the confidentiality applies.
In our view, communications between an attorney and their client cannot be considered "for the purpose of, in the course of, or pursuant to ..." a mediation. (§ 1119, subd. (a).) Communications between a client and an attorney are made to facilitate the passing of critical information about the facts of a case to a lawyer who can sort out their legal significance and use them to advocate his client's behalf. The discussions between them are made *962 for the sole purpose of resolving the party's lawsuit in a manner that is as advantageous as possible to the client.
If a broader definition were given to the words "for the purpose of a mediation" it is difficult to determine where the demarcation line might be drawn as to those communications between an attorney and his client that are for mediation and those that are not. Indeed, mediations are fluid, and a variety of unpredictable matters may become relevant and used by an attorney in a mediation as a means to resolve a particular dispute. In a mediation, something a client told an attorney months or years earlier might become relevant when the opposing side begins to reveal its strategy and the attorney is called upon to refute its significance or strength as evidence. As a result, an attorney might bring up all types of communications a client had with him in the course of a mediation. If communications between an attorney and his counsel are considered "for the purpose of mediation," virtually every discussion between an attorney and his client during the course of representation could be considered as falling within that definition because any discussion may be used for a mediation purpose down the line. For the same reason, such communications cannot be considered to be "pursuant to ... a mediation." (§ 1119, subd. (a).)
Likewise, communications between an attorney and his own client cannot be considered to be "in the course of" a mediation, and as such prohibited from disclosure by section 1119. If this were to occur, attorneys advising their clients to enter into mediation would be obligated to advise them of the effect, consequence and ramification of the confidentiality shroud. In certain circumstances this would enable confidentiality to be used as both a sword and shield by an attorney during the representation process. Specifically, a client who embarks upon the mediation process would face losing any recourse against his attorney for any breached side agreements, representations and deficiencies that might take place or come to light during the mediation.
Aside from the attorney-client communications, testimony was also introduced at trial about the communications between and among the mediation participants. Mrs. Porter herself testified in direct examination concerning the Porters' meeting with the mediator and with lead opposing counsel during the mediation. Mrs. Porter testified that the Porters met with the mediator at one point during the mediation and were told that Wyner and the mediator in the underlying action were concerned about a "double-dipping" issue relating to her lost earnings claim. She testified that afterwards, Wyner advised her to resolve this issue by dropping her lost earnings claim. She claimed he assured her she would be paid out of the attorney fee recovery and that she waived her lost earnings claim after receiving this assurance from Wyner. The Porters *963 introduced contemporaneous notes Mrs. Porter had made that tracked the course of mediation. Mrs. Porter also testified regarding various spreadsheets that were used during the mediation, which reflected the offers and counteroffers both sides made during the negotiations.
However, because we have concluded that the mediation confidentiality statutes only apply to disputing parties and not to a client and his attorney, even though conversations took place with the mediator or opposing counsel present, it still leads to the result that they need not have been excluded from trial. Wimsatt does not compel a different result. The issues in Wimsatt were similar to those presented here: the client in a legal malpractice action alleged that just before a mediation was to occur, his attorneys breached their fiduciary duty by lowering the amount of the client's settlement demand without the client's consent or knowledge. (Wimsatt, supra, 152 Cal.App.4th at p. 144.) The communications at issue referred to an alleged $1.5 million settlement demand made by the plaintiff's attorney to at least one of the defendant's attorneys. (Id. at pp. 147, 158.) The attorney was successful, in part, in securing a writ of mandate requiring the trial court to vacate a denial of a protective order sealing the communications as within the purview of mediation confidentiality. (Id. at pp. 148-149.) When determining that many of the statements should have been subject to a protective order, the Wimsatt court held that "[t]he stringent result we reach here means that when clients ... participate in mediation they are, in effect, relinquishing all claims for new and independent torts arising from mediation, including legal malpractice causes of action against their own counsel. Certainly clients, who have a fiduciary relationship with their lawyers, do not understand that this result is a by-product of an agreement to mediate." (Id. at p. 163.) However, Wimsatt did not hold that that the mediation confidentiality rule bars every communication with a party's attorney simply because the communication took place during a mediation. In Wimsatt, the court determined that statements in mediation briefs and emails should be protected from disclosure, but that statements made by counsel regarding the settlement value of his client's case, were not covered by mediation confidentiality because the moving party had failed to show there was a readily identifiable link to the mediation confidentiality.
(3) In this case, Porter and Wyner did not demonstrate to the trial court that each of the communications admitted at trial had an identifiable link to mediation confidentiality. This step was never undertaken since they withdrew their objection to all potentially confidential evidence before trial began. Even if we were to analyze the statements now, the critical conversations admitted in this case were that Wyner advised Porter to drop her lost earnings claim that he assured her she would be paid out of the attorney fee recovery, and that she waived her lost earnings claim after receiving this assurance from Wyner. Those statements were not made in the presence of the mediator; *964 they were discussions solely between an attorney and his client. That Porter and Wyner were able to reach a side agreement about paying her fees may have facilitated a final resolution of the underlying case between the Porters and the District, but any discussions about that side deal were not between disputants to the mediation.
The trial court granted its motion for new trial based on the Simmons case, but in light of our analysis, we find it does not compel that result. In Simmons, our Supreme court determined that the doctrine of estoppel does not create an exception to mediation confidentiality. In that case, a settlement allegedly was reached during mediation with the plaintiffs on a defendant doctor's behalf. When the defendant was informed the case had settled, she declared she was revoking her consent and refused to sign the settlement agreement. (Simmons, supra, 44 Cal.4th at p. 575.) Plaintiffs then sought to enforce an alleged oral settlement. (Id. at p. 576.) During pretrial proceedings, in the course of arguing that no enforceable contract was formed during mediation, the defendant had stipulated to, and submitted evidence of, events that had occurred during mediation. (Id. at pp. 574, 576.) However, at trial the defendant for the first time asserted that the mediation confidentiality statutes precluded the plaintiffs from proving the existence of an oral settlement agreement. (Id. at p. 577.)
A divided Court of Appeal panel held the defendant estopped from claiming mediation confidentiality because she had presented evidence of occurrences at the mediation and failed to object to plaintiffs' use of such facts during pretrial motions. (Simmons, supra, 44 Cal.4th at p. 577.) The California Supreme Court reversed and held that the mediation confidentiality statutes must be strictly enforced. (Id. at p. 581.)
The Supreme Court noted the Court of Appeal majority had relied on the doctrine of estoppel ostensibly to "`prevent a litigant from tardily relying on mediation confidentiality to shield from the court facts which she had stipulated to be true and had extensively litigated without raising such [a] bar.'" (Simmons, supra, 44 Cal.4th at p. 582.) But the Supreme Court agreed with the dissenting appellate justice that "`[b]y focusing on estoppel, the majority in essence [was] attempting to create a new exception to the comprehensive scheme.'" (Ibid.) The court declared, "Except in cases of express waiver or where due process is implicated, we have held that mediation confidentiality is to be strictly enforced." (Ibid.)
Though we understand where the trial court might have been worried that the present facts were similar to the Simmons case given that Wyner and Tiffany withdrew any objection to the mediation privilege before trial began, it provided no ground to order a new trial.
*965 Here, the communications between the Porters, on the one hand, and Wyner and Tiffany, their attorneys, on the other hand, were not within the purview of the mediation confidentiality statutes in the first instance. We recognize that the broad policy of mediation confidentiality is to be strictly enforced and implied exceptions have not been met with acceptance by the California Supreme Court. However, the communications that have been denied protection here do not fall within the statute and no exception has been created. Quite the contrary, here we simply decline to extend the confidentiality component to a relationship neither envisioned nor contemplated by statute.[10]

Cross-appeal
Wyner Tiffany's cross-appeal asserts that this court should direct the trial court to enter judgment in their favor as to various claims asserted by the Porters and by Wyner Tiffany in their cross-complaint. Wyner Tiffany argue that Mrs. Porter premised a specific claim upon her alleged oral agreement during mediation to waive the claim based on certain assurances. Accordingly, Wyner Tiffany urge, the Porters are precluded from disclosing even the existence of this purported agreement if evidence of occurrences during mediation is excluded. The Porters rejoin that, even if this court discounts the evidence pertaining to the mediation, substantial evidence wholly unconnected to the mediation supports the jury's verdict and precludes a JNOV.
In light of our determination that the evidence of communications between the Porters and Wyner Tiffany was properly admitted at trial to prove up their "side" agreements, we find that the competing arguments regarding the motion for JNOV are off the mark on both sides. The issue at this point is whether Wyner Tiffany are entitled to JNOV, given an examination of the trial record, including the evidence of attorney-client communications.
Because the Porters' additional claims did not rely exclusively on evidence subject to the mediation confidentiality provisions and because a substantial portion of Wyner Tiffany's showing in support of their cross-appeal relies on evidence of discussions and communications during the mediation meeting itself and during negotiations over the form of the definitive settlement agreement, matters subject to mediation confidentiality, we find the JNOV should be addressed in the first instance by the trial court.
Unlike Simmons, in which the court found the mediation confidentiality statutes made inadmissible all evidence of an oral contract and no possibility *966 existed that the plaintiffs could prove the only claim they had asserted, we are faced with a different context. The trial court in Porters' current case must address the admissibility of evidence within the scope of mediation confidentiality under the principles we have referenced out in this opinion, and determine whether the Porters proved their case. If they did, JNOV should be denied; if they did not, JNOV should be granted.

DISPOSITION
The order granting a new trial is reversed. The cause is remanded to the trial court to rule on the JNOV based upon a review of the entire trial record including admissible attorney-client communications. The parties are to bear their own costs on appeal.
Rubin, J., concurred.
FLIER, J., Dissenting.
I respectfully dissent.
The "critical conversation[]" (maj. opn., ante, at p. 963) (hereafter sometimes the "Wyner-Porter conversation") in this case was when Steven Wyner told Deborah Porter to drop her lost earnings claim and when, as part of that same conversation, Wyner assured Porter that she would be paid out of the attorney fee recovery; Porter then waived her lost earnings claim.
The only reason the Wyner-Porter conversation took place was because a mediation was taking place and efforts were being made to settle the case in this mediation. In other words, the Wyner-Porter conversation took place because there was a mediation and this conversation represented an effort to bring the mediation to fruition.
Evidence Code section 1119, subdivision (a) provides in relevant part that "[n]o evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible...." The purpose of the Wyner-Porter conversation was to move the mediation along, it took place in the course of the mediation and it was pursuant to the mediation because that was the only reason the conversation took place.
The majority opinion concludes that Evidence Code section 1119, subdivision (a) does not apply because "[c]ommunications between a client and an attorney are made to facilitate the passing of critical information about the facts of a case to a lawyer who can sort out their legal significance and use them to advocate [on] his client's behalf." (Maj. opn., ante, at p. 961.) This is true as a general proposition but this is not what happened during the *967 Wyner-Porter conversation. Porter was not giving Wyner the facts of the case; Wyner and Porter were discussing whether Porter should drop her loss of earnings claim in return for the promise that Wyner would cure the resulting deficiency from his fees. And the mediation was the only reason this conversation was taking place.
The majority opinion states that it will be difficult to draw the lines between those attorney-client communications that are for the purpose of a mediation and those that are not and that "something a client told an attorney months or years earlier might become relevant" during the mediation. (Maj. opn., ante, at p. 962.)
Three things can be said about this conclusion.
First, it is not hard to draw the line in this case when it comes to the Wyner-Porter conversation; it satisfies all three alternatives (for the purpose of, in the course of, and pursuant to a mediation).
Second. Mediation confidentiality does not attach to evidence simply because it is used in the mediation. "Evidence otherwise admissible or subject to discovery outside of a mediation or a mediation consultation shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation or a mediation consultation." (Evid. Code, § 1120, subd. (a).)
Third. A statement made months or years prior to the mediation is not very likely to have taken place for the purpose of, in the course of, or pursuant to a mediation. That such a statement might become relevant in the mediation does not mean that it is covered by mediation confidentiality.
The majority opinion states that if mediation confidentiality were to be extended to the attorney-client relationship it would render Evidence Code section 958 a nullity. (See maj. opn., ante, at p. 960.) Section 958 provides that "[t]here is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship." (Italics added.) Mediation confidentiality is not a privilege.
Finally, the majority opinion states if mediation confidentiality is applied to attorney-client communications, "clients would be precluded from pursuing any remedy against their own counsel for professional deficiencies occurring during the mediation process as well as representations made to the client to induce settlement." (Maj. opn., ante, at p. 961.) In other words, what if the lawyer commits malpractice during the mediation itself?
*968 "The Supreme Court has repeatedly resisted attempts to narrow the scope of mediation confidentiality. The court has refused to judicially create exceptions to the statutory scheme, even in situations where justice seems to call for a different result. Rather, the Supreme Court has broadly applied the mediation confidentiality statutes and has severely curtailed courts' ability to formulate exceptions." (Wimsatt v. Superior Court (2007) 152 Cal.App.4th 137, 152 [61 Cal.Rptr.3d 200].) Assuming that legal malpractice in mediation is to be addressed, this should be left to the Legislature.
With reference to the last point, it is noteworthy that the court's majority opinion sweepingly exempts all client-lawyer communications from mediation confidentiality. In my opinion, such a drastic exception must be made by the Legislature under carefully crafted statutory standards.
NOTES
[1] All further statutory references are to the Evidence Code unless otherwise indicated. Sections 1115 through 1128 set forth a far-reaching statutory scheme protecting the confidentiality of mediation proceedings with specified exceptions. Section 703.5 provides, with certain exceptions, that mediators are not "competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with" the mediation.
[2] Under a fee-shifting statute, if Wyner Tiffany in the underlying action were found liable, they were also responsible to pay the Porters' attorney fees and costs.
[3] Throughout their briefs, the Porters refer to a "mediation privilege." As other courts have noted, the term "mediation confidentiality" more accurately describes the protections provided to communications made in connection with mediation under section 1115 et seq. in that the mediation confidentiality rules are not "privileges" as such in the traditional sense. (See Wimsatt v. Superior Court (2007) 152 Cal.App.4th 137, 150, fn. 4 [61 Cal.Rptr.3d 200] (Wimsatt); In re Marriage of Kieturakis (2006) 138 Cal.App.4th 56, 61-62 & fn. 2 [41 Cal.Rptr.3d 119]; Eisendrath v. Superior Court (2003) 109 Cal.App.4th 351, 362-363 [134 Cal.Rptr.2d 716].)
[4] The release, written on Wyner & Tiffany letterhead, expressly stated: "Rule 3-400 of the California Rules of Professional Conduct require that we advise you that you have the right to seek advice of an independent lawyer of your choice regarding [this release]. The Rule states that: [¶] Rule 3-400. Limiting Liability to Client [¶] A member shall not: [¶] (A) Contract with a client prospectively limiting the member's liability to the client for the member's professional malpractice; or [¶] (B) Settle a claim or potential claim for the member's liability to the client for the member's professional malpractice, unless the client is informed in writing that the client may seek the advice of an independent lawyer of the client's choice regarding the settlement and is given a reasonable opportunity to seek that advice."

The Porters testified changes were made to the release at their request, but they did not consult another attorney before they signed it. Nonetheless, they testified they signed under duress because they were concerned the settlement would unravel if they refused.
[5] The opening paragraphs of the settlement agreement expressly listed each plaintiff and each defendant in the underlying action and stated that "[t]he [p]laintiffs and the [d]efendants may sometimes hereinafter be referred to collectively as the `Parties.'"
[6] Just prior to trial, the court sustained Wyner Tiffany's demurrer to the Porters' claim of malpractice after they admitted they suffered no injury from Wyner Tiffany's allegedly incorrect tax advice.
[7] The record before us does not include a copy of Wyner Tiffany's cross-complaint.
[8] Section 958 provides: "There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship."
[9] Section 912 provides: "(a) Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege), 980 (privilege for confidential marital communications), 994 (physician-patient privilege), 1014 (psychotherapist-patient privilege), 1033 (privilege of penitent), 1034 (privilege of clergyman), 1035.8 (sexual assault counselor-victim privilege), or 1037.5 (domestic violence counselor-victim privilege) is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege."
[10] In their briefs, the parties predictably argue their respective sides regarding whether there was an implied or express waiver of mediation confidentiality in this case. We find it unnecessary to address this issue in light of our conclusion.