[No. S086696. Mar. 8, 2001.]

BRUCE SWEATMAN III, Plaintiff and Appellant, v.
DEPARTMENT OF VETERANS AFFAIRS, Defendant and Respondent.

## COUNSEL

Law Offices of Robert K. Scott and D. Scott Mohney for Plaintiff and Appellant.

Arnulfo Hernandez, Jr., Elizabeth C. Wied, Frank Perez Tays, Bruce A. Crane, Patrick Ramirez S. Bupara, Chian He, Charles A. DeCuir, Valla Hoffman, Michael B. O'Harra and Karla Y. Franko for Defendant and Respondent.

Clifford Hirsch for GAB Robins North America, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**MOSK, J.**—This case concerns a claim for disability benefits under the "Home Protection Plan of Life and Disability Coverage for Cal-Vet Purchasers" (hereafter the Cal-Vet home protection plan) established by respondent Department of Veterans Affairs of the State of California (hereafter the Department) under the Veterans' Farm and Home Purchase Act of 1974 (Mil. & Vet. Code, § 987.50 et seq., hereafter sometimes the Act), commonly called the Cal-Vet program. We granted review to address the question whether disability coverage under the Cal-Vet home protection plan is insurance that is subject to mandatory provisions of the Insurance Code. For the reasons stated below, we conclude that the answer is negative. Accordingly, we affirm the judgment of the Court of Appeal.

I

This matter involves a dispute concerning whether the Insurance Code governs the terms of disability coverage under the Cal-Vet home protection plan.

The Cal-Vet program has been described as follows. "The Veterans' Farm and Home Purchase Act of 1974 . . . was enacted 'to provide veterans with the opportunity to acquire farms and homes.' ([Mil. & Vet. Code] § 987.51.) Under the Act, the Department is empowered to buy farms and homes from their owners and sell the properties back to eligible veterans under long-term installment contracts at a low rate of interest. Since the sale is by installments (§§ 987.69, 987.71), the Department retains legal title to a property until the price has been paid in full. [Citation.] Funds for the Department's purchases are provided by the public through general obligation bonds." (*Department of Veterans Affairs v. Duerksen* (1982) 138 Cal.App.3d 149, 151 [187 Cal.Rptr. 832], fns. omitted.) The Act is a "carefully controlled program designed to assist veterans in acquiring residences." (*Duerksen*, at p. 155.)

As part of the Cal-Vet program, the Department requires loan applicants to submit an application for the Cal-Vet home protection plan, which provides coverage for loss of life and for permanent total disability. To be eligible for life coverage, applicants must agree to submit satisfactory evidence of insurability and pay monthly premiums. To be eligible for disability coverage, they must qualify for life coverage and, in addition, must be under 62 years of age, be regularly employed outside the home for at least 30 hours a week, and show satisfactory evidence of insurability.

The Cal-Vet home protection plan is administered under a master agreement with the Department by Pacific Mutual Group Life Insurance Company

(hereafter Pacific Mutual), which reviews, approves, and monitors applications for coverage. Pacific Mutual provides administrative services only; it neither insures nor underwrites any liability of the Department or any obligation under the Cal-Vet home protection plan. Coverages under the plan are "a form of self-funded benefits as between the Department and each Participant."

Pacific Mutual annually calculates the contribution necessary to fund the Cal-Vet home protection plan and the Department deposits that amount into one of two bank accounts constituting the fund. Participants' premiums are also deposited into the accounts. The funds are invested by Pacific Mutual. If the accounts become insufficient, the Department may make an additional contribution to the account. Pacific Mutual investigates and approves claims, and pays approved claims to the Department from the funds in the account. Specifically, under the disability coverage, if a participant is totally disabled for more than three months, Pacific Mutual pays an amount equal to the monthly loan installment to the Department from the account.

As provided in the master agreement, basic death coverage "shall be incontestable" after it has been in force during the lifetime of the participant for two years. There is no similar limit on contestability of disability claims; the master agreement states that "[n]o benefits shall be payable for permanent and total disability if such disability resulted from . . . a condition pre-existing the date of loan approval" by the Department.

The Department of Insurance has taken the position that the Cal-Vet home protection plan is not insurance subject to the provisions of the Insurance Code. If a participant in the Cal-Vet program submits a complaint or inquiry to the Department of Insurance regarding disability coverage under the Cal-Vet home protection plan, it refers the matter to the Department of Veterans Affairs and issues a form letter sent to the participant, and copied to the Department of Veterans Affairs, stating that such "inquiry does not relate to a matter within the jurisdiction of this Department."

In 1988, appellant Bruce Sweatman III, a veteran, obtained a loan to purchase a home in Riverside County under the Cal-Vet program. Under the loan contract, he agreed, "as required by the Department," to maintain various forms of insurance, including disability insurance payable to the Department, "as added security for performance" of the contract. He applied for disability coverage under the Cal-Vet home protection plan, submitting an application including information concerning his medical history.

In his application, Sweatman answered affirmatively the question whether he had been examined in the past five years by a doctor, physician, psychiatrist, or chiropractor. He provided the following details: in May 1986, he

had been tested for HIV before being married; in March 1988, he had been treated for a pulled muscle in his left shoulder; his personal physician was Dr. Ron Pepitone. He answered negatively the question whether he had been in a hospital, sanitarium, or other institution for observation, rest, diagnosis, or treatment in the last 10 years. He also answered negatively questions as to whether he had ever had symptoms of, or been examined or treated for, any of a variety of conditions, including "nervous/mental disorder."

The application included a signed declaration by Sweatman to the effect that all of the statements contained in the application were true and correct "and that no material information has been withheld or omitted concerning the past and present state of my health," and acknowledging that "any willful misstatements shall make any coverage based on this application void at the option of the administrator."

In fact, Sweatman had been hospitalized for two weeks in July 1986 with a diagnosis of "major depression." He was treated by a psychiatrist, H. Edmond Whiteley, M.D., until early 1987 for that condition, "with a consideration of a diagnosis of Bipolar Disease" and posttraumatic stress disorder.

Sweatman's application for life and disability coverage was approved, subject to a rider excluding coverage for injury to or disease of the left shoulder. The rider stated that it "form[s] part of the Supplemental Disability Benefit Documents under the Cal-Vet Homeowners Plan funded by the Department of Veteran Affairs." He received a pamphlet entitled Home Protection Plan of Life and Disability Coverage for Cal-Vet Purchasers, describing coverage under the plan. The pamphlet summarized the policy provisions concerning claims limitations, including the limitation that total disability was not covered if it was "the direct result of a condition, bodily injury or disease which existed at the date of the underwriting decision." He did not receive a certificate of coverage, nor was his application endorsed upon or attached to the policy.

In 1993, Sweatman submitted a claim for disability benefits. He described the illness-causing disability as "manic-depression bipolar II." He listed a hospital confinement at Oceanside Hospital for treatment in July 1986. After an investigation, which included review of medical records, Pacific Mutual declined the claim and rescinded the life and disability coverage on the ground that Sweatman had misrepresented his medical history; his loan contract would be credited for premiums paid for the coverage. It subsequently reinstated the life coverage "due to the contract language which states that the coverage cannot be rescinded after it has been in force for two years"; disability premiums charged before the denial of coverage for disability were credited to his account and his monthly installment for life coverage, and interest was adjusted accordingly.

Sweatman brought this action against the Department and Pacific Mutual for breach of contract. He contended, as pertinent herein, that the disability coverage constituted insurance, and hence was incontestable under Insurance Code section 10350.2. Summary judgment was granted in favor of Pacific Mutual on the ground that it was only the administrative agent for the Department.

Trial commenced in February 1998. The superior court denied the Department's motions in limine for a ruling that the Cal-Vet home protection plan *was not* insurance. It subsequently denied a motion for a directed verdict in which Sweatman contended that the Cal-Vet home protection plan *was* insurance and that it was therefore regulated by the Insurance Code.

The jury returned a special verdict, finding that the Department did not breach its contract with Sweatman under the Cal-Vet home protection plan by rescinding his disability benefits. Sweatman moved for a judgment notwithstanding the verdict, contending that the Cal-Vet home protection plan constituted insurance subject to the mandatory provisions of the Insurance Code, including the requirement that disability insurance include an incontestability clause. The superior court denied the motion, stating that the legal basis supporting the jury's verdict was the law governing contracts, rescission, and false representation. It thus impliedly rejected the claim that the disability plan constituted insurance.

Sweatman appealed from the order denying the motion. He contended that the Cal-Vet home protection plan was insurance that must be construed to comply with the Insurance Code, under the provisions of which he could not be denied disability benefits.

The Court of Appeal affirmed. It concluded that although the Cal-Vet home protection plan involved the insurance-like functions of shifting and distributing a risk of loss, the disability coverage, like the so-called collision damage waiver offered by car rental companies in *Truta v. Avis Rent A Car System, Inc.* (1987) 193 Cal.App.3d 802 [238 Cal.Rptr. 806], was merely an *optional and incidental element of the overall transaction between Sweatman* and the Department, the principal object and purpose of which was financing the purchase of a home. As a matter of law, it was not insurance subject to the provisions of the Insurance Code.

We granted review; we now affirm.

## II

### A

Sweatman appealed from the order denying the motion for judgment notwithstanding the verdict. ■ A trial court must render judgment notwithstanding the verdict whenever a motion for a directed verdict for the aggrieved party should have been granted. (Code Civ. Proc., § 629.) A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 110 [120 Cal.Rptr. 681, 534 P.2d 377].)

The moving party may appeal from the judgment or from the order denying the motion for judgment notwithstanding the verdict, or both. (Code Civ. Proc., § 904.1, subd. (a)(4) [making such an order appealable].) As in the trial court, the standard of review is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion. (*Ibid.*; *Hauter v. Zogarts, supra,* 14 Cal.3d at p. 111.)

Sweatman does not dispute that there was substantial evidence that his application for coverage under the Cal-Vet home protection plan did not disclose his history of depression, and that the master agreement excludes coverage for preexisting conditions and permits rescission for misstatements in the application. Rather, he contends that his claim for benefits was incontestable as a matter of law, under mandatory provisions of the Insurance Code. The jury herein was not asked to resolve any factual questions bearing on the question whether the life and disability plan constituted insurance. Nor do the parties offer conflicting evidence on this point.

■ The sole question before us, then, is one of law: was the disability coverage offered by the Department under the Cal-Vet program a form of insurance subject to the Insurance Code, including the requirement that disability insurance policies include an incontestability clause? We accordingly address the issue under a de novo standard of review.[1]

### B

The Insurance Code includes numerous compulsory requirements for policies of disability insurance. (Ins. Code, § 10350 et seq. [specifying

---

[1]The Department belatedly asserts that Sweatman failed to exhaust his administrative remedies. We decline to address the point, which was omitted from the opinion of the Court of Appeal and was not raised by the Department in a petition for rehearing. (Cal. Rules of Court, rule 29(b)(2).)

compulsory standard provisions for disability policies].) Thus, as pertinent herein, Insurance Code section 10350.2 mandates that a disability policy must contain an "incontestable clause," providing that "[n]o claim for . . . disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy." The Insurance Code further requires, in section 10381.5, that "[t]he insured shall not be bound by any statement made in an application for a policy unless a copy of such application is attached to or endorsed on the policy when issued as a part thereof." Other compulsory standard provisions relate to changes in the policy, time limits on certain defenses, grace periods, reinstatement of the policy, notice of claim, claim forms, proof of loss, time for payment of claim, payment of claims, physical examinations, limitations of actions, and change of beneficiary. (*Id.*, §§ 10350-10350.12.) Policies that do not contain the required provisions are enforceable as if they did. (*Id.*, § 11580.)

The Insurance Code also includes numerous requirements relating to disclosures to, and oversight by, the Department of Insurance. (See also, e.g., Ins. Code, § 10270.9 [requiring a copy of form of disability policy to be filed with Insurance Commissioner]; *id.*, § 10290 [requiring written approval by the Insurance Commissioner of the form of disability policy]; *id.*, § 10270.6, subd. (b) [requiring that group disability master policies provide that insurer will issue "an individual certificate setting forth a statement as to the insurance protection to which [the insured] is entitled and to whom payable"]); *id.*, § 10604 [stating the mandatory contents of the disclosure form]; *id.*, § 10605 [requiring dissemination of disclosure forms to individual or group disability contract holders].) In addition, the Insurance Code includes provisions regulating the business of insurance. (E.g., *id.*, § 700 [unauthorized transaction of the business of insurance]; *id.*, § 10430 et seq. [general regulation of life insurers].)

The Veterans' Farm and Home Purchase Act of 1974 is a "carefully controlled program designed to assist veterans in acquiring residences." (*Department of Veterans Affairs v. Duerksen, supra,* 138 Cal.App.3d at p. 155.) Administration of the Cal-Vet program "is vested solely in the Department of Veterans Affairs." (Mil. & Vet. Code, § 987.54.) "The department shall adopt rules and regulations in keeping with the purposes of [the Act] to establish preferences in the granting of benefits conferred by [the Act]." (*Id.*, § 987.55.) The Department, in turn, is subject to oversight by the California Veterans Board, a body consisting of seven members appointed by the Governor, subject to confirmation by the State Senate. (*Id.*, § 65.) The

Legislature has provided that "[t]he California Veterans Board shall determine the policies for all operations of the department." (*Id.*, § 72.)

The Act includes comprehensive provisions governing all aspects of the Cal-Vet program, including, inter alia, eligibility (see, e.g., Mil. & Vet. Code, §§ 987.56, 987.566, 987.57), acquisition of property by the Department (see, e.g., *id.*, §§ 987.60, 987.601, 987.65), the contract with the veteran for sale of the property (*id.*, § 987.69), the amount of the initial payment and interest rate (*id.*, §§ 987.71, 987.87), cancellation of the contract (*id.*, § 987.77), and sale of the property in the event of forfeiture (*id.*, § 987.785).

The Act also includes provisions regarding maintenance of insurance on the property. Thus, it requires that the purchaser insure and keep insured against fire and other hazards, all buildings, fences, and other improvements on the property. (Mil. & Vet. Code, § 987.74, subd. (b).) "All policies shall be written with any loss payable to the department and the purchaser as their interests may appear. Insurance shall be in the amount, with the insurance companies, and under the terms and conditions as may be specified by the department." (*Ibid.*) The Department "shall be the sole judge of . . . [¶] . . . [¶] . . . [t]he amount of loan insurance or guaranty to be placed upon the veteran's liability for repayment of the veteran's contract and the amount necessary to be paid by the veteran or the department for the premiums or fees for that insurance or guaranty." (*Id.*, § 987.76, subd. (d).)

The Act further provides that the Department is the "sole judge of . . . [¶] . . . [¶] . . . [t]he amount of insurance to be placed upon the buildings" and improvements, and "the amount necessary to be paid for the premiums for that insurance." (Mil. & Vet. Code, § 987.76, subd. (b); see 39 Ops.Cal.Atty.Gen. 120, 126 (1962) ["Since the department is the insured and has broad powers relating to the insurance . . . there is no necessity for the department to be licensed under the Insurance Code in order to perform [various] functions [involving transaction of insurance under the master insurance contract]"].)

Specifically with regard to life or disability insurance coverage, the Act states that such insurance "shall be a form of group life or group disability insurance" notwithstanding the provisions in the Insurance Code governing life and disability insurance in Insurance Code section 10110 et seq. (Mil. & Vet. Code, § 987.88, subd. (a).) It also provides that the Department, after consultation with the Insurance Commissioner, may maintain such reserves as it "deems appropriate and prudent." (*Id.*, subd. (b).) Any surplus or refunds or returns in the reserves may be used by the Department "from time

to time . . . for the purposes of this article or of any veterans general obligation or revenue bond act." (*Ibid.*) "Any and all acts of the department in maintaining and using the reserves consistent with [the Act] are hereby ratified and confirmed, it having at all times been the intent of the Legislature that reserves be maintained and that any surpluses therein or refunds or returns therefrom be used by the department for the purposes stated in [the Act]." (*Ibid.*)

Although the Act thus authorizes the Department to enter into a master agreement with an insurer to provide disability insurance, the coverage at issue herein is provided by the Department itself, not by an independent insurance company. As discussed, Pacific Mutual, which administers the Cal-Vet home protection plan, neither insures nor underwrites any liability of the Department nor any obligation under the plan. Monthly premiums of participants are paid into a fund administered and invested by Pacific Mutual; in the event of total disability, benefits in the amount of a veteran's monthly loan contract payments are authorized by Pacific Mutual to be paid from the fund to the Department.[2]

The Department does not purport to comply with the general requirements of the Insurance Code concerning disability insurance; the master agreement does not contain the numerous standard provisions that must be included in every disability policy. Thus, the Cal-Vet home protection plan contains no incontestability clause applicable to disability claims. On the contrary, the master agreement expressly *excludes* such coverage: "No benefits shall be payable for permanent and total disability if such disability resulted from . . . a condition pre-existing the date of loan approval" by the Department. Moreover, although the form of coverage offered under the Cal-Vet program has certain characteristics of group disability insurance—e.g., it is written under a master policy—it does not conform to the particular requirements for such policies under the Insurance Code. (See Ins. Code, §§ 10270.5 [group disability insurance], 10270.505 [additional permitted form of group disability insurance].) The Department does not file a copy of the form of the policy with the Insurance Commissioner or issue certificates of coverage.

A veteran denied benefits may appeal the decision to the Department, where it is subject to administrative review by the California Veterans Board. (Mil. & Vet. Code, § 86.) Except for judicial review, the decision is final. (*Ibid.*)

---

[2]The benefits thus serve to reduce the default rate on Cal-Vet loans. As amicus curiae point out, a low default rate on Cal-Vet loans serves to promote the high quality of the bonds issued pursuant to the Veterans' Farm and Home Purchase Act of 1974, which allows them to be sold at a lower interest rate. By this means, the Department is able to maintain a lower price on its financing contracts with eligible veterans under the Cal-Vet program.

The Department of Insurance does not review or approve disability insurance coverage under the Cal-Vet program. Nor does it review claims concerning such coverage. If a veteran files an inquiry or complaint with the Department of Insurance regarding the Cal-Vet home protection plan, it issues a form letter, copied to the Department of Veterans Affairs, stating: "Since your inquiry *does not relate to a matter within the jurisdiction of this Department*, we are sending it to the [Department of Veterans Affairs] for consideration." Nor does the Department of Insurance purport to regulate the Department of Veterans Affairs as an entity in the business of transacting insurance.

More important, the Insurance Code appears to include an exception for the program of life and disability insurance under the Cal-Vet program. Insurance Code section 770.3 provides, as pertinent: "No state department or agency shall negotiate any life or disability insurance or require the placing of that insurance through particular agents, brokers, or companies, except to the extent that the state has a direct financial interest in the subject of the insurance. . . . Nothing herein contained shall affect the program of life and disability insurance in connection with veterans' farm and home purchases through the Department of Veterans Affairs . . . ." (Cf. Ins. Code, § 1853.95 ["Admitted insurers are expressly authorized to enter into agreements with the Department of Veterans Affairs with respect to the furnishing of insurance covering property being purchased from such department . . . at special rates and forms for such insurance as are determined by the Director of Veterans Affairs to be reasonable"].)

## C

Sweatman contends that the disability coverage under the Cal-Vet home protection plan constitutes insurance subject to the Insurance Code. He asserts that it falls squarely under the definition of insurance as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." (Ins. Code, § 22.) He emphasizes that under our case law, insurance principally requires two elements: "(1) a risk of loss to which one party is subject and a shifting of that risk to another party; and (2) distribution of risk among similarly situated persons." (*Metropolitan Life Ins. Co. v. State Bd. of Equalization* (1982) 32 Cal.3d 649, 654 [186 Cal.Rptr. 578, 652 P.2d 426].) Both of these elements are present under the Cal-Vet home protection plan. For these reasons, he urges, the disability coverage is subject to the mandatory provisions of the Insurance Code. Specifically, he contends that, by the time he submitted his claim, statements in the application had become incontestable; moreover, because the application was not attached to the contract for

insurance, misrepresentations concerning his medical history could not, in any event, be used as a basis to deny coverage.

The Department counters that the Court of Appeal correctly ruled that the Cal-Vet home protection plan is not insurance subject to regulation by the Department of Insurance, but an incidental benefit under the Cal-Vet loan contract, the principal object and purpose of which is to finance the purchase of a home.

We agree that the disability coverage under the Cal-Vet home protection plan is not disability insurance subject to the provisions of the Insurance Code generally governing such policies.

It is true that the disability coverage at issue meets the broad statutory definition of insurance as "a contract whereby one undertakes to indemnify another against loss arising from a contingent or unknown event." (Ins. Code, § 22.) It would also appear to fall within the general category of "[d]isability insurance," defined under the Insurance Code as including insurance "appertaining to disablements resulting to the insured from sickness." (*Id.*, § 106.)

It is also true that the Cal-Vet home protection plan, like disability insurance contracts issued by licensed insurers, includes some risk shifting and risk distribution. Disability benefits are paid out of a fund that includes monthly contributions by veterans. The Department itself refers to the disability benefit as "insurance" in the loan contract and requires participants in the Cal-Vet program to complete an "application for insurance," i.e., the Cal-Vet home protection plan. Under the plan, Pacific Mutual is authorized to offer coverage to participants upon "satisfactory evidence of *insurability.*"

Moreover, we are not persuaded by the Court of Appeal's reliance on *Truta v. Avis Rent A Car System, Inc., supra,* 193 Cal.App.3d 802, which held that the so-called collision damage waiver offered by car rental firms did not meet the definition of insurance. The coverage in *Truta* was optional and clearly peripheral to the contract for rental of an automobile. By merely checking off a box on the rental contract, the lessee accepted the collision damage waiver option, under which, for a consideration, he or she could reallocate the risk of loss in the event the vehicle sustained damage during the rental term. (*Id.* at p. 814.) By contrast, the disability coverage under the home protection plan was not optional; the Department *requires* eligible participants to maintain life and disability insurance. Moreover, unlike the collision damage waiver, the home protection plan is distinct from the loan contract; it involves a separate application process and approval, including

medical disclosures, subject to investigation and review. Nor does the Cal-Vet home protection plan involve a merely "tangential risk allocation" as in *Truta*; it is, instead, a spreading of risk within insurance concepts. (*Ibid.*)

None of these points, however, compels the conclusion that the Cal-Vet home protection plan amounts to insurance subject to the requirements of the Insurance Code. As we explained in *Title Ins. Co. v. State Bd. of Equalization* (1992) 4 Cal.4th 715, 726 [14 Cal.Rptr.2d 822, 842 P.2d 121]: " '[T]he mere fact that a contract contains these two elements [shifting and distribution of risk of loss] does not necessarily mean that the agreement constitutes an insurance contract *for purposes of statutory regulation.*' " (Italics added.)

Rather, the Legislature has expressly vested administration of the Cal-Vet program *"solely in the Department of Veterans Affairs."* (Mil. & Vet. Code, § 987.54, italics added.) As part of its exclusive authority in this highly regulated area, the Department directly oversees the Cal-Vet loan program, subject to the provisions of the Military and Veterans Code. The Cal-Vet home protection plan, a mandatory term of participation in the loan program, constitutes a form of self-funded benefits as between the Department and each participant; it protects both the interest in the property of the veteran stricken with a disability, by securing his or her performance on the loan contract, and the interest of the Department, which holds legal title to the property. As such, it would appear to fall within the Department's exclusive scope, subject to the oversight of the California Veterans Board. The master agreement is, accordingly, a valid contract, enforceable under the terms and conditions therein.

The insurance coverages offered under the Cal-Vet home protection plan, although comparable in many respects to plans of commercial disability and life insurance, do not fall within the purview of the Insurance Code. Nor have they ever been treated as doing so. Subjecting the Cal-Vet home protection plan and the Department to the comprehensive regulatory scheme applicable to insurance contracts between private parties under the Insurance Code, and thus requiring the overlapping authority of the Department of Insurance in this specialized area, would appear inconsistent with the legislative mandate.

Finally, Sweatman makes the additional argument that because his life coverage was reinstated, the Department could not at the same time continue to deny disability coverage: the Cal-Vet home protection plan as a whole was either "valid and contestable, or it was not." The point was not raised in the motion for judgment notwithstanding the verdict or in the Court of

Appeal. In any event, it is without merit. The life coverage and disability benefits were separate insurance coverages, subject to different standards of eligibility. They were also subject, under the master ágreement, to different provisions regarding contestability. Thus, it is not true, as Sweatman contends, that the plan failed to set forth any incontestability provision. In fact, as discussed, the master agreement *did* include an incontestability clause, but regarding the life coverage only. Under the terms of the contract, disability coverage was thus subject to rescission at the time Sweatman filed his claim, although life coverage was not.

### III

For the foregoing reasons, we affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.