Filed 7/17/25  Ryan v. Oak Glen Christian Conference Center CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| LYSANNE RYAN, | |
| Plaintiff and Appellant, | E079939 |
| v. | (Super.Ct.No. CIVDS1619816) |
| OAK GLEN CHRISTIAN CONFERENCE CENTER, LLC et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Janet M. Frangie, Judge.  Affirmed.

Levy Labor Law, and Jeremy J. Levy, for Plaintiff and Appellant.

Manning & Kass Ellrod, Ramirez, Trester, Al M. De La Cruz, Christine La Vorgna and Mark R. Wilson, for Defendants and Respondents.

1

## INTRODUCTION

Lysanne Ryan, began working for Oak Glen Christian Conference Center (Oak Glen) in 2015 as a guest services manager of the campground owned and operated by Oak Glen. Oak Glen was owned by the Free Methodist Church of Southern California (Free Methodist) at the time of Ryan's hiring but it was sold in late 2015 to a group of churches incorporated as the Southern California Blending Center (Blending Center), an entity organized for religious purposes. Ryan continued working for Oak Glen after the purchase by the Blending Center.

In 2016, Ryan experienced health problems, and was finally, after extensive tests, diagnosed with sarcoidosis. She attempted to obtain accommodations to continue working on a part-time basis or working from home, but Oak Glen never addressed her requests for accommodations. Ryan was terminated in May 2016, and filed suit for, among other claims, disability discrimination, failure to accommodate, failure to engage in the good faith interactive process, retaliation in violation of the fair employment and housing act (FEHA), and fraudulent inducement to move under Labor Code section 970.

Following a three-phase jury trial, the jury agreed that Oak Glen failed to engage in the good faith interactive process but found that Oak Glen was a religious corporation that had not waived its religious exemption. Ryan filed a motion for a new trial, which was denied, and appealed.

On appeal, Ryan argues there is insufficient evidence to support the finding that Oak Glen was a religious corporation entitled to exemption and that the trial court abused its discretion in denying Ryan's motion for a new trial. We affirm.

**BACKGROUND**

Dispositive of Ryan's challenges to the judgment is the issue of whether Oak Glen and, by extension, the Blending Center qualified as a religious corporation which is exempt from FEHA laws. We therefore begin with an overview of the formation, structure, and purposes of Oak Glen, as well as its acquisition by the Blending Center, and then review Ryan's employment at Oak Glen and the procedural history of the case. We omit facts that were adduced at trial that pertain to claims not pursued on appeal.

**A. *Oak Glen***

Free Methodist is a global church denomination and is a geographical association of approximately 50 churches. The Oak Glen campground was built by Free Methodist in the 1950's to promote Christian camping and retreating, and to provide a gathering place for members of Free Methodist and other groups, including other churches in Southern California.

In 2011 or 2012, Free Methodist considered putting the campground up for sale because it believed it no longer needed a campground and wished to divest itself of the property. In mid-to-late 2014, discussions began with a prospective buyer for the campground, the Church in Irvine (Irvine Church). Craig Birchler, is a minister for the Irvine Church and a real estate broker, who was familiar with the campsite at Oak Glen.

3

Birchler, along with a group of churches in Southern California, had been looking for a conference center, and learned the campground was for sale. Birchler was approached by leaders of other local churches to put together a deal to purchase the campground because he had a broker's license. Because Birchler is a member of the Irvine Church, and was also one of the senior leadership persons with the group of churches interested in acquiring the campground, the purchaser of the campground was indicated as the Irvine Church; however, while in escrow, the group of churches decided that the Blending Center would be formed to hold title to the property. The group of churches soon realized it could not maintain the property on its own and decided to open use of the campground to other churches and Christian groups.

The Blending Center's articles of incorporation provided that it was a California religious nonprofit corporation and that it "will achieve its purpose by using facilities already developed, and yet to be developed, on approximately forty five acres of undulating wooded land nestled at the base of the San Bernardino Mountains in the city of Yucaipa." This refers to the Oak Glen campground.

Next, the Blending Center formed the entity, Oak Glen Christian Conference Center, LLC (as distinguished from the campground itself) in September 2015 to take over the operations of the campground and it began operation as a conference center. Oak Glen was granted tax-exempt status as a religious corporation by the Franchise Tax Board, effective October 2, 2015. The Oak Glen operating agreement provides that its purposes include facilitating activities "for the fellowship and building up of the Body of

4

Christ, through the preaching of the gospel of Jesus Christ" and "help[ing] to spread and promote the Word of God, the Bible, by providing a place that will foster spiritual refreshment and growth along with education and constitution with the truths."

Escrow closed on December 22, 2015, when all employees of Free Methodist were informed that their employment under Free Methodist was terminated, and that they would be hired by Oak Glen. The employee handbook issued by Free Methodist was replaced by the Oak Glen employee handbook.

The Oak Glen employee handbook identifies the conference center as "a ministry of the [Blending Center], and is dedicated to the glory of God." The handbook provides that the conference center is "a place where people can retreat from the ordinary cares and routines of modern living and experience God in meaningful ways." The handbook also contains a "Statement of Faith" which employees are required to read, understand, and acknowledge.

The Oak Glen handbook provides that the conference center believes the Bible is the "final authority concerning truth, morality, and the proper conduct of mankind, [and] is the sole and final source of all that we believe," and contains a "Statement on Marriage, Gender, and Sexuality," in which the conference center affirms that its beliefs about marriage and sexuality are biblically derived.

Section 3.1 of the Oak Glen handbook states that all employees are "at-will." Regarding termination of employment, the handbook states: "Voluntary termination results when an employee voluntarily resigns his or her employment at [Oak Glen], or

5

fails to report to work for three consecutively scheduled workdays without notice to and approval by, his or her supervisor."

For the first three months, all employees undergo an introductory period, after which Oak Glen will review their performance, and, if performance is found to be satisfactory, the employment may continue, and eligible employees will receive benefits.[1] However, other than the operations and facilities director, all other employees are considered for short-term, seasonal, or daily assignments, and temporary employees are not entitled to any benefits other than those required by law.

The Oak Glen handbook has no section describing employee benefits other than paid time off for paid holidays, vacation, and sick leave; permanent employees (both full and part time) are entitled to sick leave, while full-time employees are entitled to vacation and paid time off. No health benefits were mentioned in the handbook.

Because the campground was intended for use by other Christian groups and churches for religious purposes, all contracts signed by other groups who wanted to use the camp specified that they would not practice or teach contrary to Oak Glen's religious beliefs.

---

[1] "Eligible employees" and "benefits" are not defined in the Oak Glen handbook. Only one position is described as full-time, that of operations and facilities director. All other employment at Oak Glen is described as short term, seasonal, or daily assignments. Only full-time employees are entitled to paid leave (for holidays) or sick leave; part-time employees are entitled to limited sick leave. Only full-time employees are entitled to paid vacation or other paid time off.

**B.** *Ryan's Employment, Disability, and Termination at Oak Glen*

In December 2014, Ryan learned that her husband, Richard Anderson, was looking for jobs in California and in January 2015, Ryan learned that Anderson had reached out to Oak Glen for employment. During Anderson's telephone interview, Jerome Winn, the camp operations director asked Anderson what work Ryan did. Upon learning that there was another position open for a guest services manager at Oak Glen, Ryan applied for the job in early 2015 while it was still owned by Free Methodist.

Prior to being hired, Ryan's husband inquired about health insurance. Anderson was told that after the 90-day introductory period, full-time employees were eligible for health insurance. Ryan also inquired about health insurance benefits. During a virtual interview in January 2015, using Skype, Winn expressed concern that it was a big deal to move from Michigan to California when the campground was up for sale, but Ryan and Anderson indicated they were fine with it so long as they had pay and health insurance. There had been two or three discussions of health insurance before Ryan and Anderson accepted employment and moved to California, because Ryan had health problems that required regular treatments and medications.

Winn indicated that health insurance was never promised, although he had told Anderson that they might receive health insurance at a future time, and that Winn would continue to work on it; but Winn made no promises.

Winn made offers to Ryan and Anderson in a second Skype video call in January 2015. Ryan and Anderson were actually hired on February 6, 2015. Ryan's job duties

7

included answering phone calls from leaders that were going to come up and book their groups, taking down their information, booking and preparing for the retreats, doing all the paperwork and clerical work, sending emails to the leaders regarding insurance policies, making sure deposits were mailed in, and making sure that housekeeping had schedules of when groups were in and out of their dorms, as well as arranging activities for groups. Winn was Ryan's direct supervisor.

Upon arrival at the campground, Ryan and Anderson were provided with a house, and Winn said nothing about not getting health insurance. After the 90 days had ended in June 2015, Ryan began asking Winn about health insurance. Winn told Ryan and Anderson that there was possibly a sale in the works, and they had to "wait and see." Winn never told Ryan that she and Anderson would not get health insurance, only that there would be a delay. Neither Ryan nor Anderson received a review after the 90-day introductory period ended.

By July or August 2015, Ryan started to suspect they were not going to get health insurance because they still had not had their 90-day review. On December 22, 2015, after the sale was completed, Ryan and the other employees received an email from Winn stating that their employment with the Free Methodist Church was terminated, and, through the same email, they were offered continued employment through Oak Glen. Ryan continued with the same duties working for Winn, although both she and Anderson were now employed through Oak Glen.

On March 17, 2016, Ryan experienced a rapid heart rate, numbness of the neck, so she asked Winn for permission to leave. Winn told Ryan she could not leave unless it were a life and death situation, and Anderson responded that it was life or death, so Winn agreed to let them leave.

On March 20, 2016, Ryan was in the hospital for a hypertensive crisis and tachycardia. After her discharge, she went to her primary doctor and sent an email to Winn indicating her doctor directed her to take a week off from work, but she offered to come in for a few hours depending on how she felt. Winn replied that he needed a doctor's note specifically indicating how much time off Ryan needed, and that he did not want Ryan returning to work without a medical clearance.

On March 22, 2016, Ryan suggested that she could perform some tasks from home. However, Winn responded that she was either off work or not off work and requested Ryan to provide a doctor's note and a medical clearance. Ryan emailed Winn on March 22, 2016, with attached photos of her medical charts, and indicated she was attaching a doctor's note excusing her from work until March 28, 2016.[2]

On March 31, 2016, she provided a doctor's note directing that she take time off work from April 1 to April 7, 2016. On April 4, Ryan emailed Winn to inform him that she has a nodule in her lungs and enlarged lymph nodes pressing on her lungs and will know more after her scan results. Winn responded to Ryan with a reminder to provide an additionally doctor's note for the extra time off.

---

[2] The actual note, Exhibit 50, was not included in the appellant's appendix.

On April 14, 2016, Ryan provided an additional doctor's note taking her off work from March 31 to April 18, 2016. On April 22, Ryan emailed Winn to inform him she was finally diagnosed with sarcoidosis, a rare autoimmune disease causing granulomas to grow in her lungs, pain, exhaustion, numbness, and enlarged organs. Ryan emailed Winn to inform him of the diagnosis, her need for treatment and provided Winn with a list of potential accommodations. Ryan suggested she could perform certain tasks from home, such as typing up contracts, sending out emails, and preparing happening lists, among other tasks.

Winn responded to Ryan by email on April 22, 2016, that working at home was not an option and indicated he was praying that "the Lord will give [him] and the ministry the right person to help us through this time." Winn also indicated there had been a lack of communication about Ryan's condition and her future availability, despite Ryan having sent emails, made phone calls, and even tried to see Winn in person.

After Ryan received Winn's email accusing Ryan of not staying in touch with him, Ryan went to the office to see Winn in person to provide him with an off-work release from Ryan's doctor for the period between April 21, and May 21, 2016. Ryan tried to discuss disability accommodations with Winn at that time, but Winn said no. Because Ryan lived on-site, approximately 200 yards from the office, Ryan again tried to asked Winn about disability accommodations. Winn again denied the request and expressed anger that Ryan's illness had resulted in Winn's assumption of extra work.

10

Initially, Ryan had regularly informed Winn apprised of her condition, but he told her to stop emailing him so frequently and Winn stopped responding to Ryan's emails. So, after April 24, 2016, over a month passed without Ryan contacting Winn, although Anderson kept Winn updated on Ryan's condition. On the work schedule, Ryan was scheduled to be "off" through May 22. However, the note from Ryan's doctor only authorized time off through May 21, although on May 25, Ryan obtained another time-off note from her doctor, excusing her from work between April 13th and June 30.

Ryan's regular workdays were typically Tuesday through Saturday, with Sundays and Mondays off, and she was not entered into the work schedule for the week of May 23rd through May 29th, 2016. She did not report to work on Saturday, May 21, which would have been a regular workday, or on the following Tuesday or Wednesday. Ryan acknowledged that she did not communicate directly with Winn between May 21st and May 25th and that there were dates when she was scheduled to work but did not work and did not have a doctor's note. However, she was not scheduled to work on May 22. Additionally, Anderson acted as a middleman to regularly relay updates about Ryan's condition to Winn after Winn told Ryan to stop contacting him.

On May 25, 2016, as she waited for a scan of her lungs, Ryan received a letter from Winn via email, terminating her for abandoning her position. That same date Ryan obtained a doctor's note dated May 25, excusing her from work until June 30.

## C. *Procedural History*

In November 2016, Ryan filed a lawsuit against Winn, Oak Glen, and Free Methodist (collectively, Defendants) alleging numerous causes of action under the FEHA (Gov. Code, § 12900 et seq.), the Labor Code (Lab. Code, §§ 203, 226.7, 512), and the California Family Rights Act (Gov. Code, § 12945.2.)

Certain claims asserted by Ryan were resolved by way of a motion for summary adjudication (*Oak Glen Christian Conf. Ctr., LLC v. Superior Court* (Apr. 19, 2019, E071868) [nonpub. opn.]), and others were apparently resolved by either settlement or stipulation based on indirect references during trial. The case proceeded to trial on the claims of religious creed harassment, disability discrimination, failure to accommodate, failure to engage in the good faith interactive process, retaliation in violation of the FEHA, and fraudulent inducement to move under Labor Code section 970.[3]

The trial was conducted in three separate phases. Phase one addressed whether Oak Glen and Free Methodist were liable for fraudulent inducement to relocate under Labor Code section 970. Both Free Methodist and Oak Glen moved for a directed verdicts; the court granted a directed verdict in favor of Oak Glen but denied it as to Free Methodist. The jury later found in favor of Free Methodist on this issue.

---

[3] Both parties refer to this fact in their briefs so we must take them at their word, given the state of the record. The record on appeal includes the original complaint comprising 15 causes of action but no express reference to which claims were tried to the jury. The instructions given at trial covered those claims only. Because no one disputes that the other causes of action were either settled or dismissed, we follow suit.

12

The case proceeded with phase two, addressing the surviving claims against Oak Glen and Winn, disability discrimination based on disparate treatment; failure to accommodate; failure to participate in the interactive process; retaliation; religious creed harassment; negligent infliction of emotional distress; and whether Oak Glen waived its religious exemption under FEHA, at the conclusion of which the jury answered "no" to the question asking if Ryan was able to perform the position's essential job duties with an accommodation, and "no" to the question whether Ryan was able to perform the essential job duties with a reasonable accommodation for her disability.

The jury also found Ryan did request an accommodation so that she could perform the essential job duties and that Oak Glen or its agents failed to participate in a timely, good faith interactive process with Ryan to determine whether reasonable accommodation could be made, and the failure to participate in a good faith interactive process was a substantial factor in causing harm to Ryan.

However, the jury also found that Ryan's disability and medical leave were not motives for the decision to terminate her and found there was no harassing conduct related to Ryan's Catholic religion. The jury found that Oak Glen was a nonprofit religious corporation or association formed by, or affiliated with, a particular religion, and that Oak Glen did not waive its religious exemption under FEHA.

On the emotional distress claim, the jury found that the conduct of Oak Glen was not outrageous, and that Ryan did not show by clear and convincing evidence that Birchler, Anthony Jacobson (Winn's supervisor and a member of the board of officers at

13

Oak Glen) or Winn engaged in the conduct with malice or oppression. Judgment was entered in favor of Oak Glen, Winn, and Free Methodist. Winn, Oak Glen, and Free Methodist were awarded costs in an amount to be determined.

On July 8, 2022, Ryan file a motion for a new trial or, in the alternative, for judgment notwithstanding the verdict (JNOV). The grounds for the motion were that (1) defense counsel committed misconduct during his sur-rebuttal to closing argument by introducing evidence that had previously been excluded upon Oak Glen's own objection and committed misconduct in introducing facts outside the record; (2) the introduction of excluded evidence improper argument in Oak Glen's sur-reply closing argument that likely confused the jury on the issue of whether Oak Glen waived its religious exemption; and (3) Ryan produced overwhelming evidence that defendant's conduct and written policies waived their religious exemption.[4] The motion was denied on September 9.

Ryan appealed on September 30, 2022.

### DISCUSSION

Ryan argues that Oak Glen was not entitled to a religious exemption and that the trial court erred in denying her motion for new trial. Among the issues subsumed in the argument relating to the new trial motion, Ryan includes a claim that Oak Glen waived its religious exemption, if one existed. Ryan raises no claims relating to the judgment regarding Free Methodist.

---

[4] We assume Ryan intended to refer to Code of Civil Procedure section 657, subdivision (6), which authorizes a new trial where there is insufficient evidence to justify the verdict or other decision, or the verdict or other decision is against law.

14

We address the claim of error in the trial court's denial of Ryan's motion for a new trial or, in the alternative, JNOV first, and then address the issues relating to the religious exemption.

**1. *Denial of the Motion for a New Trial, or in the Alternative, JNOV was Proper***

Ryan argues that the trial court erred in denying her motion for a new trial, or JNOV because it permitted Oak Glen to present further closing argument on the issue of whether Oak Glen had carried its burden of proving that it had not waived its exemption. Ryan categorizes this alleged error as one of attorney misconduct, in order to bring the claim within the statutory grounds for a grant of a new trial. We disagree.

**a. *About New Trial/JNOV Motions in General***

"A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury, court, or referee." (Code Civ. Proc., § 656.) A new trial may be ordered "on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: [¶] 1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial. [¶] 2. Misconduct of the jury . . . . [¶] 3. Accident or surprise, which ordinary prudence could not have guarded against. [¶] 4. Newly discovered evidence . . . . [¶] 5. Excessive or inadequate damages. [¶] 6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law. [¶] 7. Error in law, occurring at the trial and excepted to by the party making the application." (Code Civ. Proc., § 657.)

15

The denial of a motion for new trial is reviewed for abuse of discretion, where we, as the reviewing court, making an independent determination as to whether any error was prejudicial. (*Argueta v. Worldwide Flight Services, Inc.* (2023) 97 Cal.App.5th 822, 832–833, citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859 (*Aguilar*); see *Nazari v. Ayrapetyan* (2009) 171 Cal.App.4th 690, 693–694.) However, "any determination underlying [the new trial] order is scrutinized under the test appropriate to such determination." (*Aguilar*, *supra*, at p. 859.)

The most fundamental rule of appellate review is that the judgment or order challenged on appeal is presumed to be correct, and it is the appellant's burden to affirmatively demonstrate error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) "'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.'" (*Id*., at p. 609.)

Ryan argues that a new trial is required because of irregularity in the proceedings, and of the adverse party, specifically, the order by the court allowing defense counsel to make additional closing argument, and defense counsel's reference to a part of the employee handbook to which the defense had objected during trial.

Respecting motions for JNOV, Code of Civil Procedure section 629, subdivision (a), provides: "The court, before the expiration of its power to rule on a motion for a new trial, either of its own motion, after five days' notice, or on motion of a party against whom a verdict has been rendered, shall render judgment in favor of the aggrieved party

16

notwithstanding the verdict whenever a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made."

On appeal from the denial of a motion for JNOV, we determine if any substantial evidence, whether contradicted or not, supports the jury's verdict. (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) "If there is, we must affirm the denial of the motion. If the appeal challenging the denial of the motion raises purely legal questions, however, our review is independent." (*Foxcroft Productions, Inc. v. Universal City Studios* LLC (2022) 76 Cal.App.5th 1119, 1133–1134, citing *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138.)

As its initial basis for a new trial, Ryan argues that Oak Glen's counsel committed misconduct by requesting to present a sur-rebuttal to closing argument, and the trial court's order permitting it. During trial, Ryan's objection to Oak Glen's request had assumed Oak Glen intended to introduce evidence outside the record, but Oak Glen argued, and the court confirmed that it wanted to address its burden of proof on the religious exemption. Ryan's counsel responded, "That's fine, your Honor." When prompted by the court, Ryan's counsel added, "You know, I object, but [Oak Glen is] going to do it."

Again, the court reminded Ryan's counsel of the need to state grounds for the objection, to which Ryan's counsel replied, "Your Honor, this should have been dealt with before." Oak Glen's counsel then presented argument on the issue of whether the exemption had been waived.

17

Section 607 outlines the order in which a jury trial should proceed. However, Ryan forfeited any claim of error in the departure from the usual order of closing argument by failing to cite any legal basis the objection.

Next Ryan claimed that by referring to a section in the handbook for which testimony had been excluded, Ryan had been prejudiced by Oak Glen's closing argument in sur-rebuttal. Early in the trial, defense counsel for Oak Glen had requested to publish the employee handbook in its entirety, and that request was granted. During trial, Oak Glen objected on Evidence Code section 352 grounds to questions posed by Ryan regarding section 1.2 of the handbook, and the court sustained the objection despite Ryan's argument that the handbook was already in evidence.

Later, in the course of presenting its sur-rebuttal argument, Oak Glen's counsel referred to page 6 of section 1.2 of the handbook, pertaining to Oak Glen's statement on marriage and sexuality. Ryan's counsel objected on the ground it assumed facts not in evidence, and the court sustained the objection. Oak Glen's counsel then stated, "Well, you cannot discriminate and so the very nature of the fact that how a church is run and its principals and the fact that it is a religious organization, you should not think that they're simply going to give up the protections they have based on the First Amendment and Article 4 of the California constitution." Ryan did not request a cautionary instruction.

Because Ryan had previously attempted to introduce the reference to the portion of the handbook dealing with marriage and sexuality, she has not been *aggrieved*. Because the handbook in its entirety had been admitted into evidence the section addressing Oak

18

Glen's positions on marriage and sexuality were already before the jury. Moreover, Ryan's objection to Oak Glen's reference to the excluded portion of the handbook during sur-rebuttal was sustained. Ryan has not been aggrieved.

Section 902 of the Code of Civil Procedure states in relevant part, "'Any party aggrieved may appeal in the cases prescribed in this title.'" (*Kunza v. Gaskell* (1979) 91 Cal.App.3d 201, 206.) It has now been long settled that "A party may not appeal from a judgment or order made in his favor." (*Coburg Oil Co. v. Russell* (1950) 100 Cal.App.2d 200, 204.)

The favorable ruling to Ryan's objection during Oak Glen's sur-rebuttal renders Ryan un-aggrieved by the content of the argument. To the extent Ryan contends that the mere reference to that portion of the handbook was enough to prejudice Ryan's substantial rights, she is in error. It was Ryan who proffered the handbook, marked as exhibit 2, moved it into evidence, and it had already been admitted into evidence. Once the handbook was admitted into evidence, the jury was free to review it because it was not redacted in any way. As part of the appellant's appendix, we have also reviewed it.

Counsel forfeited any complaint about the court's order permitting Oak Glen to make further argument, and, as we have pointed out, there could be no prejudice flowing from Oak Glen's reference to the statement of marriage and sexuality, which was contained in the employee's handbook, and accessible to the jury notwithstanding the objection to the passage in question. The denial of Ryan's motion for new trial, or, alternatively, for JNOV, was a proper exercise of judicial discretion.

19

## 2. *Whether Oak Glen is a Religious Corporation, Exempt From FEHA Laws*

Ryan argues that (a) Oak Glen is not a religious corporation as a matter of law, and (b) that even if it did qualify, it waived its exemption. We disagree. Ryan also argues that the issue of whether Oak Glen is a religious entity is an issue of law rather than a question a fact, in order to avail herself of the more favorable standard of independent or de novo review.

Regarding the standard of review, we note that the jury was tasked with deciding the issue after testimony and evidence were submitted for its consideration. The parties prepared special verdicts on the question of whether Oak Glen was a religious corporation, and the jury made its finding that it was. It was therefore submitted as a factual question, given that the jury sits as a trier of fact (Evid. Code, § 312), so we apply the substantial evidence standard of review.[5]

As summarized in *Mathews v. Happy Valley Conference Center, Inc.* (2019) 43 Cal.App.5th 236, at page 251, "Contrary to defendants' argument that all their appellate arguments raise issues of law and are therefore reviewed de novo, we review a jury's factual findings for substantial evidence. We will reverse a jury's verdict only if it is unsupported by any substantial evidence, meaning to prevail on appeal defendants must show that the evidence was such as would justify a directed verdict in their favor.

---

[5] The cases cited by Ryan involving a de novo standard of review did not involve jury findings on the question. Instead, they were cases disposed of by pretrial dispositive motions, such as summary judgment, which are reviewed de novo. (See *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n* (3d Cir. 2007) 503 F.3d 217 (*LeBoon*), & *Spencer v. World Vision, Inc.* (9th Cir. 2010) 619 F.3d 1109 (*Spencer I*).)

[Citation.] When applying the substantial evidence test, 'we resolve "all conflicts in the evidence and all legitimate and reasonable inferences that may arise therefrom in favor of the jury's findings and the verdict."' [Citation.] We do not reweigh the evidence or judge the credibility of witnesses. [Citation.] The 'power of the appellate court is limited to a determination of whether there is any substantial evidence, contradicted or uncontradicted, that will support the verdict.'"

"In 1959, the California Fair Employment Practices Act (FEPA) was enacted and then recodified in 1980 as part of the [FEHA]. (Stats. 1980, ch. 992, § 4, p. 3140; Gov. Code, § 12900 et seq.)." (*Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1747.) FEHA has a federal counterpart in title VII of the Federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

Government Code section 12940, prohibits discriminatory practices by employers by declaring as unlawful practices, the action of an employer, in refusing to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, reproductive health decision-making, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status of any person. (Gov. Code, § 12940, subd. (a).)

"'Employer' includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, . . . except as follows:  [¶] 'Employer' does not include a religious association or corporation not organized for private profit."  (Gov. Code, § 12926, subd. (d); *Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1114.)

Ryan contends that Oak Glen was an employer because it did not qualify as a religious corporation or entity, so we look to the entire record to determine if there is substantial evidence to support the jury's special verdict.  However, there is substantial evidence to support the jury's finding.

Government Code section 12926.2, subdivision (a), states, "'Religious corporation' means any corporation formed under, or otherwise subject to, Part 4 (commencing with Section 9110) or Part 6 (commencing with Section 10000) of Division 2 of Title 1 of the Corporations Code, and also includes a corporation that is formed primarily or exclusively for religious purposes under the laws of any other state to administer the affairs of an organized religious group and that is not organized for private profit."

For purposes of determining whether an employer is exempt from the California FEHA provisions, the evidence adduced at trial supports the jury's verdict:  the articles of incorporation state that Oak Glen is operated exclusively to further the educational and charitable purposes of its members, within the meaning of the Internal Revenue Code section 501(c)(3).

22

Additionally, the limited liability company operating agreement declares, in section 1.4, that the specific purpose of the company includes facilitation activities for (1) the fellowship and building up of the Body of Christ, through the preaching of the Gospel of Jesus Christ, the teaching of God's economy and the shepherding of the members of the local churches in Southern California, which stand on the ground of oneness including the ground of locality as described by the publications of the living stream ministry, and (2) which help to promote and spread of the Word of God, the Bible, by providing a place that will foster spiritual refreshment and growth along with education and constitution with the truths.

The California FEHA does not require a nine-factor test for determining whether an entity is a religious entity. Nevertheless, at trial, Ryan argued for instructing the jury how to determine that the employer was a religious entity, citing *Spencer v. World Vision, Inc.* (9th Cir. 2011) 633 F.3d 723 (*Spencer II*). That case, a *per curiam* opinion, interpreted whether an entity was exempt as a religious entity under 42 U.S.C. § 2000e-1(a) from Title VII's general prohibition against religious discrimination. The opinion described the nine-factor test as one that "other 'courts have looked at' in determining whether an entity qualified for [42 U.S.C.] section 2000e-1." (*Spencer II*, *supra*, at p. 727 (conc. opn. O'Scannlain, J.).)

The factors discussed included all the factors found in the special instruction given to the jury here but included the additional factor of "whether the entity holds itself out to the public as secular or sectarian." (*Spencer II*, *supra*, 633 F.3d at p. 727 (conc. opn.

23

O'Scannlain, J.).) After listing the nine factors, however, the court stated, "The Third Circuit added the caveat that 'not all factors will be relevant in all cases, and the weight given each factor may vary from case to case. [Citation.] The court also noted that the [42 U.S.C.] section 2000e-1 exemption should not be denied to institutions because they, inter alia, engage in some secular activities, do not adhere to the strictest tenets of their faith, or do not hire only coreligionists." (*Ibid*.)

The question of Oak Glen's status as a religious entity was a question for the jury, and that determination was based on instructions upon which, as Ryan acknowledges, the parties agreed. That instruction informed the jury, "A Religious Corporation is determined by (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church, (5) whether a formally religious entity participates in the management, for instance[,] by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, and (8) whether its membership is made up by [*sic*] coreligionists." The jury considered the evidence and found for Oak Glen on these factors.

On appeal, Ryan wishes for us to reverse the judgment, applying the federal test, which included a ninth factor. Specifically, Ryan argues that we should apply the nine-factor test set out in *LeBoon*, *supra*, 503 F.3d 217, but cites no authority holding that the

24

*LeBoon* factors must be applied in all cases involving religious exemptions, or that failure to instruct on the *LeBoon* factors constitutes court error. "The burden is on the appellant in every case affirmatively to show error and to show further that the error is prejudicial." (*Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601.)

We cannot apply this test to the case before us for several reasons: (1) the nine-factor *LeBoon* test is but one of many tests employed by federal courts to determine whether a religious exemption applies and there is no consensus; (2) the parties agreed upon the jury instruction that informed the jury of the factors to be considered in deciding whether Oak Glen was a religious entity; (3) the issue was presented to the jury as an issue of fact for the jury to decide so it is not a question of statutory interpretation as suggested by Ryan; (4) "[r]igid adherence to the *LeBoon* factors is … unwarranted," especially where not all factors will be relevant in all cases, and the weight given each factor may vary from case to case (*Spencer I*, *supra*, 619 F.3d at p. 1115); (5) Ryan forfeited any error by failing to object to the instruction to which it agreed. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130–1131.)

Here, because the jury was instructed to consider an agreed-upon list of factors, Ryan has forfeited the right to claim error in the failure to instruct the jury on additional factors. "In a civil case, the parties must present the trial court with paper copies of complete and comprehensive instructions (Code Civ. Proc., § 607a), and on appeal a party cannot predicate error on a refusal to give an instruction unless the proposed written instruction is made a part of the record [Citation]. If a party fails to do so, the court

25

ordinarily has no duty to instruct on its own motion. [Citation.] Similarly, a trial court has no duty to modify or edit an instruction offered by either side in a civil case and if there is error in the charge proposed, the court may reject the entire instruction. [Citation.] Because exact wording of a proposed instruction is critical to proper appellate review and because the record must establish that the trial court had the opportunity to accept or reject a particular instruction, the proffered instruction must be made a part of the record." (*Green v. County of Riverside* (2015) 238 Cal.App.4th 1363, 1370.)

Ryan agreed to the instruction on the eight factors to be considered in determining if Oak Glen were a religious entity. It therefore forfeited this claim by failing to object to the instruction which laid out an eight-factor test, and which yielded a special verdict favorable to Oak Glen, and failing to request an instruction that includes those factors she deemed relevant to the question.

Absent instructional error, there is substantial evidence to support the jury's finding that Oak Glen is a religious entity entitled to an exemption from the FEHA laws on discrimination.

### 3. *Whether Oak Glen Waived its Religious Exemption*

In connection with its argument about the denial of the motion for new trial/JNOV, Ryan argues that Oak Glen waived its religious exemption. To get there, Ryan points to the fact defense counsel requested sur-rebuttal and attempted to refer to information contained in the employee handbook that had been excluded, and argues she was prejudiced due to the overwhelming evidence of Oak Glen's waiver. Ryan then makes

the claim that defense counsel's misconduct resulted in an erroneous conclusion that the defense had the burden of proof on the issue of waiver. We disagree.

Where the essential facts are undisputed, we review de novo the trial court's decision that Defendants waived the religious entity exemption. (*Mathews v. Happy Valley Conference Center, Inc*. (2019) 43 Cal.App.5th 236, 257 (*Mathews*), citing *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319.) However, where a jury has rendered a verdict that the defendant did not waive its religious exemption, we review the jury's factual findings for substantial evidence, and we will reverse a jury's verdict only if it is unsupported by any substantial evidence. (*Mathews*, *supra*, at p. 251.)

Waiver is "the voluntary relinquishment of a known right, which may be effective as a matter of law without any demonstration that the other party was caused by the waiver to expose [itself] to any harm." (*City of Hollister v. Monterey Ins. Co*. (2008) 165 Cal.App.4th 455, 487.)

Ryan asserts there was overwhelming evidence that Oak Glen waived its exemption, citing to the reporter's transcript of Winn's testimony that it was his understanding that Oak Glen would follow their own policies and follow the law, including those pertaining to harassment, discrimination, and retaliation. This argument does not establish that Oak Glen had waived its religious exemption. Additionally, there is nothing in the handbook that could be interpreted as a waiver.

In *Mathews*, the reviewing court concluded that reference in an "employee handbook's prohibition on discrimination, harassment, and retaliation as well as its

27

references to 'state or local law' and to the [FEHA], and defendants' delay in raising the exemption during litigation," did not amount to a waiver of the religious exemption. (*Mathews*, *supra*, 43 Cal.App.5th at p. 257.) The reviewing court noted that the handbook refers to being bound by '"applicable"' laws but did not amount to a knowing and voluntary waiver of the religious entity exemption. (*Id.*, at p. 258.)

Here, Oak Glen's employee handbook contained no provision dealing with discrimination or harassment, although it does contain a provision addressing unlawful harassment, as well as another provision covering prohibited conduct, which covers employee conduct and workplace violence. The harassment policy details how complaints may be filed with the employee's supervisors who will refer the complaint up the chain of command of Oak Glen to address the issue. In the last paragraph, it mentions the Federal Equal Employment Opportunity Commission and the California FEHA as places where an employee can lodge a complaint, but in our view, this reference is as oblique as that in the handbook involved in the *Mathews*, *supra*, 43 Cal.App.5th 236 case and does not manifest a willingness to waive any religious exemption.

In any event, the record strongly supports the conclusion that the jury found Ryan was terminated because she abandoned her position by missing work three days in a row without a doctor's letter excusing her absence. Ryan admitted as much in her testimony, although she did obtain a doctor's note *after* she met the requirements for voluntary termination of her employment. The religious exemption was not waived, obviating the need for a damages phase of trial on any claims.

**DISPOSITION**

The judgment is affirmed.  Defendants and Respondents are awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

FIELDS
J.

RAPHAEL
J.